FRANK P. DYER, Appellant, v. WM. M. SUTHERLAND BUILDING & CONTRACTING COMPANY.—13 S. W. (2d) 1056.

Court en Banc, February 11, 1929.

*Strubinger & Strubinger* and *Percy Werner* for appellant.

*Banister, Leonard, Sibley & McRoberts* and *Frank P. Aschemeyer* for respondent.

1018

RAGLAND, J.—This is an action for personal injuries. Respondent states the case from one angle and the appellant from another. In order to save time we adopt in part the statement of each as constituting a general statement of the case as a whole.

"The appellant, Frank P. Dyer, a carpenter by trade, was employed by the respondent, W. M. Sutherland Building & Contracting Company, on construction work which it was doing for the Continental Portland Cement Company at Continental, Missouri, near St. Louis.

"The respondent was engaged in constructing six concrete silos, which were built in two parallel rows of three each, the silos being connected by walls running from the bottom to the top, so that there were two enclosed wells between the six silos, one between the two to the north and the two in the middle, and one between the two to the south and the two in the middle.

"Plaintiff was employed as a carpenter, and on October 29, 1920, the day on which he claims to have been injured, he was working at the bottom of the south well—that is, the well formed by the four curving walls and connecting walls of the two southernmost silos and the two immediately north thereof.

"At the time of his alleged injuries three of the silos had been completed, with the exception of capping, and each of the other three silos upon which work was progressing had reached a level of about twenty-four feet in height.

"All of the evidence showed that the silos were constructed in four-foot sections, the forms being made by segments eight feet long and four feet high, and the carpenters would set up a form for a four-foot section and after the concrete had been poured and had hardened another four-foot form would be placed on top of the first, and so the silos were built up four feet at a time.

"All of the evidence showed that inside the well in which plaintiff was working there was built a scaffold formed by 4x4's, which ran from the ground or foundation up to the top, and 2x6 ledgers were fastened across the 4x4's at whatever height was desired for the platform, 2x10 planks then being laid on top of the ledgers to form the surface of the platform. This scaffold or platform was, of course, built within the irregularly-shaped space formed by the conjunction of the four convex walls of the silo with the connecting or abutting walls.

"The plaintiff testified that at the time he was injured he was working in the bottom of the well, with concrete walls rising some twenty-four feet on all sides of him. He was engaged, with his partner, Mr. Patrick Morrison, also a carpenter, in taking out and nailing on braces to the 4x4's which supported the scaffold or platform. While engaged in this work he was struck on the shoulder by a piece of 2x4 lumber about five feet long. He did not see the piece of 2x4 fall and had no knowledge where it came from, except that it came from above. . . .

"The defendant's evidence was descriptive of the method used in constructing the silos, and was all to the effect that as the work progressed and a four-foot section on a silo had been completed, it was necessary to raise the forms up through the platform and to raise up the platform from time to time so that forms were taken up through the platform nearly every day, and the platform was raised about four times a week. It also appears from the evidence of both plaintiff and defendant that in the progress of the work it was necessary for workmen to pass continually up and down through the platform and to be taking material through the platform.

"The defendant's evidence is also to the effect that it was necessary to have openings in the platform, not only to permit the moving of the concrete forms and other materials necessary in the work, but to provide light for men who were constantly working below the platform and down in the well, and that all light came from above and through the platform." . . .

"The amended petition, on which the cause was tried, as ground for recovery, sets out Section 6802 of the Revised Statutes of Missouri 1919, which provision is as follows:

"'All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety

of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon.'

"The petition also charges common-law negligence in the failure to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, in that defendant negligently failed to have lumber which was in use on the overhead platform so placed or guarded with standards, or to have placed covers over each of the holes or open places left in the platform, as to prevent materials from falling from the platform to the place where plaintiff was at work.

"The answer of the defendant was a general denial of the allegations of the petition, and a further answer alleging that the statute pleaded in the petition, to-wit, Section 6802 of the Revised Statutes of Missouri 1919, was beyond the competence and power of the Legislature of the State of Missouri to enact and is unconstitutional and void, in six respects, separately and specially pleaded, including the' fifth ground, which was sustained by the trial court, to-wit, that the statute violated and was in conflict with Section 28 of Article IV of the Constitution of the State of Missouri, in that the subject-matter of said Section 6802 was not within the purview of the title of the act of the Legislature of Missouri, of which said section is a part, nor is said subject-matter of said Section 6802 clearly expressed in the title to said act."

At the close of the evidence the court by an instruction withdrew from the consideration of the jury the alleged statutory negligence, on the ground that the statute is unconstitutional. The case was then submitted on the charges of common-law negligence, and a verdict for defendant was returned. On this appeal but one ruling of the trial court is assigned as error, that holding said Section 6802 unconstitutional.

I. The validity of Section 6802 is challenged in this court on the single ground that the title of the act of which it was originally a part did not conform to the requirements of Section 28, Article IV, of the Constitution. The title of that act, passed in 1891 (Laws 1891, p. 159), was: "An Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees." For a statement of the specific grounds of respondent's challenge to Section 6802 we quote from its brief:

"The addition of the words ('and other establishments and places') does not broaden the subject of the act to include establishments and places other than those relating to manufacturing and mechanical and mercantile businesses, and the title of the act clearly indicates on its face that the subject of the act is solely a regulation of the safety, health and work hours of employees working in such busi-

nesses or establishments. There is no indication in the title of the act that it will purport to regulate the use of scaffolds in construction work wherever the same be carried on, regardless of what type or manner of building is to be erected, wrecked or repaired. . . . The subject-matter of the latter section (6802) is certainly not within the purview of the title of the act, nor is the subject-matter of the section clearly expressed in the title.''

Before considering the questions raised, a few general principles should be noted.

''The evident object of the provision of the organic law relative to the title of an act was to have the title like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions.'' [St. Louis v. Weitzel, 130 Mo. 600, 616.]

''The constitutional mandate in regard to the title of a statute does not require a table of contents as a caption to a law. It is sufficient if the title does not mislead as to the chief topic of the act, and that the minor features of it have a reasonable and natural connection with the subject named in the title.

''Mere generality in the title will not vitiate an act of the General Assembly, unless the title is of such a nature as to compel the conviction that it was designed to mislead as to the subject to be dealt with.'' [State ex rel. v. County Court, 128 Mo. 427, 441, 442.]

''The Constitution has made the title the conclusive index to the legislative intent.'' [City of Kansas v. Payne, 71 Mo. 159, 163.]

''The courts in all the States where a like or similar provision exists have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law. An exact and strict compliance with the letter would render legislation almost impracticable, and would lead to a multiplicity of bills which would make our statutes ridiculous.'' [State v. Miller, 45 Mo. 495, 497, 498.]

''Every reasonable presumption should be in favor of the title, which should be more liberally construed than the body of the law giving to the general words in such title paramount weight. It is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose. The remedy to be secured and mischief avoided is the best test of a sufficient title which is to prevent it from being made a cloak or artifice to distract

attention from the substance of the act itself." [State ex rel. Olsen v. Board of Control, 85 Minn. 165, 175.]

"If the words in a title, taken in any sense or meaning which they will bear, are sufficient to cover the provisions of the act, the act will be sustained, though the meaning so given the words may not be the most obvious or common." [1 Lewis-Sutherland on Stat. Const., pp. 216, 217.]

We now turn to the title of the act in question. Its language is concise and comprehensive. In interpreting it some office or function should, if possible, be ascribed to each word. Because it must be presumed that the Legislature, or the author of the bill, in selecting the words to be used in stating the subject of the act, attached some significance to each. From the language as a whole there is no difficulty in ascertaining the subject: The health and safety of employees who work in manufacturing, mechanical and mercantile establishments and places. The words "manufacturing" and "mechanical" to some extent overlap in their content, but each embraces a field of operation not included within the other, so both were used. The distinction was pointed out in an early Pennsylvania case, in defining "mechanical business" as used in a corporation act. It was said:

"A mechanical business or calling is one which involves the employment of skilled labor in shaping, uniting and combining materials, such as wood, metal, stone and other like substances, and by the aid of tools or instruments, into any kind of structure, product or other object, having in view, primarily, utility rather than the gratification of taste or of the aesthetic sense, and not involved in, or incidental to, the prosecution of one of the learned professions. While many mechanical employments may also be manufacturing, there are many mechanical employments which could not properly be included in the latter term, and *vice versa.* The statute, therefore, very properly uses both terms, and, by the use of each, intends something different, although the boundaries between the two may not be well defined." [In re Mechanical Business Cases, 9 Tenn. Co. Ct. R. 1, 5.] "Mechanical" as thus defined includes the erection of buildings. "The doing of the mason, or brick, or carpenter, or any other, work upon a building is certainly mechanical." [Finnegan v. Noerenberg, 52 Minn. 239, 245.] And the same is true as to the work employed in the construction of a concrete silo.

"Establishment" connotes a settled or fixed place where business is conducted. Manufacturing and mercantile businesses are usually and ordinarily conducted at places that are permanently established; but a mechanical business may, or may not, be carried on at a permanently fixed place; "places" were therefore added to "establishments." If our premises are correct, it follows that measures for the safety of employees engaged in erecting, repairing or taking down

any kind of a building, wherein a scaffold or a similar structure is used, are, regardless of the place where such operations are carried on, within the legislative intent of the statute as indicated by its title. Such is the construction which has been tacitly put upon the act by the bench and bar and people of the State, and acquiesced in by the Legislature, for a period of nearly forty years. The constitutional criticism leveled against it is without substance.

II. Respondent next insists that, even though the statute be held to be valid, the court properly withdrew the charge of statutory negligence, because the evidence was insufficient to take the case to the jury on that issue. So far as applicable the statute is as follows:

"All scaffolds or structures used in or for the erection . . . of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons . . . passing under or about the same, against . . . the falling of such materials or articles as may be used, placed or deposited thereon." Now the evidence tends to show that appellant, in the course of his employment, was at work on the ground under a scaffold, the platform of which was twenty-four feet above him; and that while so at work a piece of 2x4 timber, about five feet in length, fell from above and struck and injured him. The evidence tends to further show that the boards forming the scaffold platform were loose and so laid that there were numerous openings between them—some of them being four feet in length and two feet in width; that on the platform so formed there was placed, scattered at random, a miscellaneous lot of boards and pieces of timber of varying dimensions; that eight or ten men were at work on the platform; and that as they walked the boards of the platform vibrated and "rocked." This evidence would clearly warrant a jury in drawing the inference that the piece of timber which struck appellant *fell* from the platform. Such inference is supported by strong probability, and in order for it to be allowable it is not necessary that the evidence exclude every other possible hypothesis, as for example, that a careless workman dropped the timber.

Respondent contends, however, that there was evidence, including that offered on the part of plaintiff, tending to show that the scaffold in question was the only practicable one that could have been used, the character of the work being done considered; that it was necessary to have a platform of loose boards because it had to be moved up at intervals; and that it was necessary that there be openings in the platform in order that the men working below have light, and in order that they could come up and go down in the progress of their work. All this may be true, but it is no excuse for failing to have the scaffold "so secured as to insure the safety of persons . . .

1024

passing under or about the same, against . . . the *falling* of . . . materials . . . placed . . . thereon." The statute makes this duty absolute; it permits of no evasion. Whether the respondent failed to discharge this duty, and whether such failure, if any, caused appellant's injury, were, under the evidence, questions for the jury.

The judgment of the circuit court is reversed and the cause remanded. All concur, except *Blair, J.,* who dissents.