WILLIAM H. SLOAN v. POLAR WAVE ICE & FUEL COMPANY, Appellant.
—19 S. W. (2d) 476.

Division One, July 30, 1929.

*Kelley, Starke & Hassett* and *Conway Elder* for appellant.

368

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondent.

LINDSAY, C.—This is a suit for damages for personal injuries wherein plaintiff had a judgment for $20,000. The plaintiff was a painter of several years experience, and had been in the defendant's employ between three and four years at the time of his injury. On the day in question he and another employee of defendant were engaged in painting a sign on the upper part of the front of one of defendant's buildings. They were working from a scaffold. The scaffold consisted of a ladder about sixteen feet long with a board resting upon it suspended along the front of the building. It was suspended in the manner following: Two 4x6 timbers sixteen feet long, called look-outs or out-riggers, were laid on top of the building, the one end of each resting on the roof, and the other end resting on top of the fire-wall, and extending about a foot beyond the fire-wall. The top of the fire-wall was three or four feet above the roof. A block and falls was fastened to the outer end of each of these look-outs, and the lower ends of the fall ropes were attached to the corresponding ends of the ladder. A sack of sand weighing about seventy-five pounds was laid on the end of each lookout, where it rested on the roof. The building was located on the north side of Delmar Avenue in the city of St. Louis, and was about fifty feet in width. The sign being painted extended almost across the entire front of the building. The plaintiff and his companion started painting at the west end of the sign and painted one section of approximately the width of the scaffold (the length of the ladder), and then moved the scaffold and its suspensive supports to the east, so they could reach the second section of the sign. The fire-wall upon which rested the front or outer ends of the look-outs was not of even height; but the top of the east part of the fire-wall slanted eastward from a point or apex near its center, so that, in moving the scaffold to the eastward, the look-out had to rest upon the slanting top of the wall. The roof of the building upon which the inner or north ends of the look-outs rested was also slanting, the ridge of the roof being somewhat to the east of the center of the building; so that, in the second position of the scaffold, the south

ends of the lookouts rested upon the slanting side of the apex of the fire-wall, and the north ends of the look-outs rested upon the slanting roof, and the look-outs slanted from the top of the fire-wall down to the surface of the roof. The scaffold as suspended in position for the work to be done, was about eighteen feet above the sidewalk. About the time the plaintiff and his co-worker had completed priming the second section of the sign, the east one of the two look-outs pulled loose, causing the east end of the scaffold to fall, and thereby plaintiff was caused to fall to the sidewalk and was injured.

The petition specified negligence on the part of defendant in several particulars. In substance they are as follows: (1) That the defendant, in violation of the statute, negligently failed to support safely, or secure, the scaffold upon which plaintiff was working while painting and repairing one of defendant's buildings. (2) That defendant negligently failed to furnish the plaintiff a reasonably safe place in which to work, in that, defendant failed to tie or secure the look-outs from which the scaffold was suspended, so as to prevent their moving and the scaffold falling. (3) That defendant negligently failed to furnish the plaintiff with reasonably safe tools and appliances, and with adequate equipment to tie the look-outs properly. (4) That defendant negligently ordered plaintiff to place sacks of sand on the look-outs without fastening the sacks to the look-outs, so as to prevent the moving of the sacks or the moving of the look-out underneath them. (5) That defendant negligently assured plaintiff that it was reasonably safe for him to work on said scaffold, and caused plaintiff to rely on such assurance, when defendant knew, or should have known, that on account of the aforesaid conditions it was not reasonably safe for plaintiff to do so. (6) That defendant negligently failed to warn the plaintiff of the dangers incident to attempting to work under said conditions. The answer was a general denial.

Counsel for defendant insist that the court erred in refusing to give the peremptory instruction in the nature of a demurrer to the evidence. Under the foregoing contention it is first said the case was tried and submitted upon the sole theory that defendant was guilty of a violation of the statute, Section 6802, Revised Statutes 1919, and that the statute is unconstitutional. This claim of the unconstitutionality of the statute is originally made upon appeal, and in support of it attention is called to the ruling made in Division Two of this court, in Dyer v. Sutherland Building & Contracting Company. Pending the disposition of this appeal, that case was transferred to Court en Banc, and the validity of the statute was sustained. [321 Mo. 1015, 13 S. W. (2d) 1056.] Aside, however, from the mention of the rul-

372

ing in the Dyer case, it is proper to refer to the fact that the validity of this statute was not questioned in any manner upon the trial. Under the settled rule which requires that the validity of a statute be challenged at the first opportunity in the orderly procedure of the case, and the question kept alive, the point here suggested by defendant is not before us for consideration. [Lohmeyer v. Cordage Co., 214 Mo. 685, 689; Hartzler v. Metropolitan Street Railway Co., 218 Mo. 562; George v. Quincy, O. & K. C. Ry. Co., 249 Mo. 197, 199; Williams v. Short, 263 S. W. 200.]

Defendant next insists that plaintiff assumed all risk of injury incident to his employment, and that under the evidence the demurrer should have been sustained for that reason. This contention is based upon the claim that the evidence shows that the plaintiff was an experienced painter and accustomed to painting from scaffolds; that he aided in, and directed the erection of the scaffold, and the look-outs and sand-bags in the position and manner he desired, and that he knew that if the sacks of sand should shift, or come off the ends of the look-outs, the scaffold might fall, and this being true defendant was not liable for any injury plaintiff sustained through the falling of the scaffold. Our attention is called to several cases. Graves v. Metropolitan Street Railway, 175 Mo. App. 337, is cited. In that case the plaintiff was painting one of a number of columns, and there was much vehicular traffic near by. He stood upon a ladder which was struck by a passing wagon. Up to a period of three weeks before his injury, the defendant furnished a man to guard the columns, but during the three weeks' period no guard had been furnished for that purpose, and defendant's foreman had said to plaintiff that he, the foreman, would be around a part of the time, and that if plaintiff would be careful and watch, the work could be done in safety. In that case the plaintiff's petition was not framed on theory that plaintiff relied upon the promise or assurance of the foreman; and certain testimony which might have entitled him to recover on that theory was excluded from consideration. Under the theory upon which the petition proceeded, and the evidence pertinent to that theory, it was held that the plaintiff assumed the risk, and could not recover, but the case was remanded. The decision upon that phase proceeded upon the theory, that the columns to be painted were in a place where there was more or less danger to paint them, and, as they could not be removed to a safer place, must be painted where they stood; that the danger arose "not from any defect in the appliance, or in the place furnished by the master, but as an incident to and inherent in the nature of the work to be done;" and also that the danger was obvious and open to plaintiff, and he was fully cognizant of it. The distinction between that case and this is, that in the case at bar there

is allegation and evidence of failure to supply appliances and adequate equipment required for doing the work under the circumstances, and in the particular place where it was required to be done.

Attention is called to Forbes v. Dunnavant, 198 Mo. 193. In that case the plaintiff, an experienced carpenter, with others, was engaged in building a scaffold. The piece of timber which was of unsound material and which broke and caused plaintiff to fall, had been carelessly and unnecessarily selected by plaintiff's fellow-servant. In that case the defendant master furnished a mass of material, from which could be selected lumber to be used. The plaintiff and his co-worker were experienced carpenters, and the ruling proceeded upon the theory that the master may trust the servant to perform the ordinary, simple and intermediate duties, and in such a case could trust plaintiff and his co-worker as experienced men to select sound boards in the erection of the scaffold. A point of distinction between that case and this one consists in the fact that there the attention of the defendant, or of its foreman, was not directed to the character of the unsound material selected, while in the case at bar, according to plaintiff's testimony, the attention of defendant's foreman was called to the need of some means or appliance for securing the sacks of sand to the ends of the look-outs, and the foreman failed to supply such appliance and assured plaintiff the method was quite safe. Upon the same point attention is called to one or two other cases arising in the courts of this State and some in other jurisdictions. We do not think any of the cases cited, however, is conclusive upon this point, because, the contention that as a matter of law plaintiff may not recover on the ground he assumed the risk, is to be ruled in consideration also of the question whether the defendant was guilty of negligence in the respects charged. If there was evidence to go to the jury upon the question of negligence on the part of defendant, in ordering the plaintiff to use the staging and look-outs at the particular place without fastening the sand bags to the look-outs, and in failing to provide means for properly securing the sand bags to the look-outs, and in the assurance of safety, this contention of defendant cannot be sustained, under the well-settled rule of this court.

"It is the unbroken rule in Missouri, that the servant never assumes the risk where such risk grows out of the negligence of the master." [Williams v. Pryor, 272 Mo. 621, where many cases are cited.]

The rule was again stated in Williamson v. Union Electric Light & Power Co., 281 Mo. l. c. 549:

"The doctrine of this court is that an employee only assumes such risks, in respect of the place where he is put to work, as are incident to the service after the employer has performed his duty by using care to provide a place of reasonable safety. And although

the danger of the place may be obvious, if this is due to lack of care on the part of master to furnish a safe place, the servant does not assume the risk.''

The testimony of the plaintiff himself was that he worked under the direction of Mr. Holly, who was defendant's superintendent of construction and maintenance. The plaintiff testified that on the evening before the commencement of the work in question, Mr. Holly told him to use ''the staging,'' that is, the kind of platform which was actually employed, and said that Creech, who was to work with plaintiff, being a ''green hand,'' it was a good opportunity to break him in, in the use of staging. The plaintiff, at a previous time, had painted the sky-light on the building in question, and knew that the fire-wall and the roof slanted in the manner which has been described, but on that occasion there was no use of a suspended scaffold. He testified that on the evening before beginning this work, he called Mr. Holly's attention to the slant or incline of the roof and of the fire-wall, and suggested that the sand bags should be fastened to the ends of the look-outs, and suggested that it should be ''with boxing on the end of the look-out or something which would secure the look-out;'' that Holly told him in reply the work (at that place) had previously been done that way, and it was perfectly safe to go ahead and use the staging; that the sand bags had been used on the previous occasion, and it was all right; that Holly gave him no other equipment. Holly, in his testimony, denied that plaintiff spoke to him about the incline of the roof and the fire-wall, or suggested that some method should be provided of securing the look-outs to the sand bags. Holly testified that the use of the swinging scaffold with the sand bags attached to the north ends of the look-outs, was not necessarily unsafe, by reason of the slant of the fire-wall. Asked what he would do to protect the look-out if there was anything of the kind done, or to be done, he answered that he would ''tie the ballast to the end of the look-out,'' but that he had never seen the ballast so tied by anyone in the employ of defendant, and that he had never used the tying equipment. Under the evidence the danger incident to the work being done at the time plaintiff was injured, was not a danger ordinarily incident to the work done by plaintiff; but, it arose from the conditions peculiar to the place—the slanting of the roof and of the fire-wall. Plaintiff's witness, a painter and an employer of men in that kind of work, testified that ''the action of men on the stage moving all the time, makes the outrigger jump, and swivel, like sometimes the sack working loose.''

Upon a vital question in the case there is direct conflict in the testimony. According to the testimony of the plaintiff the kind of scaffold to be used was determined by Mr. Holly, defendant's superintendent of construction and maintenance, who directed that the

swinging scaffold should be used, and in response to plaintiff's suggestion that the fire-wall and the roof were slanting and some method of fastening the look-outs and the sand bags should be provided, replied that the work upon this same wall on a previous occasion had been done from the swinging scaffold and that it was safe. The plaintiff's testimony further was to the effect that his request for ropes or material to fasten the look-outs was not complied with. Mr. Holly on the other hand testified that before the painting of this sign he told plaintiff that ladder jacks should be used in the construction of the scaffold or platform upon which the men were to work. Without direct statement to that effect, the inference from the testimony is, that the use of ladder jacks was the safer method.

Upon demurrer to the evidence plaintiff's testimony is to be taken as true. Under the evidence, whether defendant was guilty of negligence in directing the kind of scaffold to be used, and in failing to furnish anything to fasten the look-outs to the sand bags, and in the assurance that it was safe, was a question for the jury. The demurrer is not to be sustained upon the ground that as a matter of law the plaintiff assumed the risk. It may be observed in passing that defendant did not plead assumption of risk or contributory negligence on the part of plaintiff. The argument made here under the claim that plaintiff as a matter of law assumed the risk, is not pressed upon the theory that defendant was free from negligence.

It is next claimed that plaintiff was guilty of contributory negligence as a matter of law, and that the demurrer should have been sustained on that account. This contention is put upon the ground that plaintiff was a painter of experience, and that Creech was subject to his directions, but, it rests mainly upon plaintiff's own testimony that when he and Creech moved the scaffold eastward, after painting the first section or stretch, they did not again test it. The manner of testing a scaffold of this kind as described in the testimony consisted in lowering the platform to a point near the ground, and having three or four men get upon it and jump up and down. The plaintiff said that after the scaffold was swung into place for the painting of the first section this test was made by him and Creech, but that this was not done after moving the scaffold into place for the painting of the second section. The failure to do that, it is urged, was such negligence on the part of plaintiff as bars recovery. In determining that question several things are to be taken into consideration. "It must appear, in order to defeat the right of action, that, but for the plaintiff's negligence operating as an efficient cause of the injury, in connection with the fault of defendant, the injury would not have happened." [Dickson v. Omaha & St. Louis Ry., 124 Mo. 149, 150.] Plaintiff testified that in moving the scaffold to the second position,

the sand bags were placed upon the ends of the look-outs. There is no testimony that the bags were broken, or that the sand leaked, nor that the hooks, ropes or any part of the appliance broke. The end of one look-out gave way through a displacement from under the sand bag which had held it down. It cannot be conclusively assumed from the evidence that the test described, if made after moving the appliance, would have disclosed that the end of the look-out was displaced or was being displaced. The evidence is that after moving the appliance to the second position, the plaintiff and Creech worked for approximately one hour upon the scaffold, and had just completed priming the second section when the scaffold gave way. They had worked for about the same length of time on the first section. In doing the work, they necessarily moved about on the scaffold. The immediate question is to be considered in view of the testimony of the witness Loomis that movements of men upon a scaffold of this kind, cause the look-outs to ''jump and swivel.'' This fact was stated by him as a reason why in his own work and employment of painters, he required the look-outs to be fastened to the sand bags. Under this claim that plaintiff was guilty of contributory negligence as a matter of law, defendant calls attention to Smith v. Union Electric Light & Power Co., 148 Mo. App. 572. In that case the plaintiff was a member of a gang of men who were told by defendant's foreman to go upon a certain scaffold and run steam pipes along a coal tower that was being built; thence, to go to another scaffold and run pipes. In using the second scaffold it was necessary to place planks upon it, upon which the men were to stand. The plaintiff and his companions took and used two planks; one of them was unsound, and broke, causing the injury. As to that defect, it was said a slight inspection would have shown the plank was unsafe and that there were other planks conveniently available to the plaintiff and his companion, and that the plaintiff's injuries were due to his own carelessness. In respect to the fact just mentioned, that case was similar to Forbes v. Dunnavant, supra. In each, the negligent act was one of selection of material used, wherein the plaintiff or his fellow-servant was negligent, and his negligence in that respect was the direct and efficient cause of the injury. The other cases cited are similar in character. In those cases the defect was one existing and manifest upon slight inspection, a condition of weakness already developed, not a condition which might result from the manner of use of two appliances. In this case the test mentioned was not made, and on the failure to make it, negligence as a matter of law is asserted; but, the test, if made immediately after moving the platform, might or might not have disclosed the fact that the end of the look-out had shifted from under the sand bags. No one could say conclusively what would have been shown as to a shifting of the

sand bags or look-outs as the result of a test made by lowering the platform to a point near the ground and having plaintiff and his companion jump up and down upon it. The test did not require them to do more than that.

There was no evidence of an instruction given by the defendant to make the test mentioned each time after moving a scaffold of this kind. The evidence falls short of showing a general rule or custom in that form of work, to make the test after each move. There was the testimony of Loomis, plaintiff's witness, that in his own employment of men he saw to it that the look-outs were fastened to the sand bags. His testimony as to the test of safety of the scaffold is as follows:

"Q. . . . When you put up scaffolding you test the rigging? A. My men do.

"Q. Before they get on it, don't you? A. Generally, yes.

"Q. And everytime you move it you test it again? A. Yes, sir.

"Q. That is to see whether it is sufficient to hold the weight of the people who are going to be on it? A. I try the hooks, see that the lugs don't break.

"Q. To see that and that everything about it is in proper order? A. We can't be too safe."

On the same point plaintiff's own testimony is as follows:

"Q. I will ask you about testing this equipment; what is the purpose of testing out the equipment by jumping upon it, what do you test? A. That is a rule we make, to see that the ropes and all equipment is sufficient to hold, but we do not test it out on every move we make; that is something no one does, is test out on every move.

"MR. KELLEY: I object to that part; something no one does; I move that it be stricken out.

"MR. EAGLETON: That part may be stricken out, what no one does."

This evidence, insofar as it tends to show a custom, is conflicting, and indefinite. It cannot be held to establish a legal rule of what would constitute ordinary care under the circumstances. [Brunke v. Telephone Co., 115 Mo. App. l. c. 38, 39, and cases cited.] Its weight was for the jury upon the question of whether the plaintiff exercised ordinary care.

There is another rule applicable in cases between master and servant which is to be taken into consideration. "It is settled law in this State that the mere knowledge that an instrumentality is defective and that there is danger in working with it 'will not defeat the action unless the danger is so glaring as to threaten immediate injury.'" [Edmondson v. Hotels Statler Co., 306 Mo. l. c. 230; Compton v. Construction Co., 315 Mo. 1087.] The rule is to be considered here in view of the plaintiff's testimony that he was assured that the work upon this building had been done on a previous occasion, using the same sort of scaffold, and that it was safe. [Burkard

v. Rope Co., 217 Mo. 466; Mooney v. Monark Gasoline & Oil Co., 298 S. W. 69; Hall v. Coal & Coke Co., 260 Mo. 351.] The assignment that the court erred in refusing to sustain the demurrer to the evidence is overruled.

Complaint is next made of the refusal to give defendant's Instruction L. This instruction is as follows:

"In accepting employment in the service of defendant for the performance of the work stated in his petition, plaintiff assumed all of the ordinary dangers and hazards pertaining to such work; and should the jury find from the evidence that the injuries alleged to have been sustained by plaintiff were the result of an accident, unmixed with any negligence of defendant, as defined in other instructions, liable to occur in the performance of the work plaintiff was engaged in at the time of such accident, and was a risk incident thereto—that is, a risk known or patent to the plaintiff, as pertaining to the work itself—then the plainiff cannot recover, and the jury should find for defendant."

It is our opinion that it was not error to refuse this instruction. The latter part of the instruction injects into the case the question whether plaintiff's injury was due to an accident. This is not a case in which the evidence justifies the inference that the occurrence was an accident, pure and simple, "the immediate cause of which is dark," as was said in Patrum v. Railroad, 259 Mo. 109, a case cited by defendant. It is not a case in which there is evidence tending to show there intervened the act or default of any third person; or, that the immediate physical cause of the fall of the scaffold was unknown, as was the case in Lehnerts v. Otis Elevator Co., 256 S. W. 819, another case cited by defendant. In the case last mentioned wet plaster fell from above the place where plaintiff was at work, in a building, and injured the sight of his eye. He was working in one of several elevator shafts then being constructed. There were no partitions between them. There was work going on in the building in the stories above where plaintiff was at work. The other work was being done by persons not under the control of defendant. In ruling in the Lehnerts case that the instruction there given, of which the one here is a literal copy, was not error, the court said, 1. c. 822. "There was nothing in the evidence to exclude the theory of accident as the explanation of the injury. If the plaster was caused to fall by others over whom defendant had no control and without fault of defendant, then such act was an accident so far as the issues involved are concerned." The ruling does not apply here under the facts shown.

In 1 Corpus Juris, page 390, the various meanings of the word "accident" are given. The substance of the definition as applicable in the law of negligence, is, that the word signifies an event resulting in damage or injury proceeding from an unknown cause, or from

a known cause without human agency or without human fault. There is no reasonable basis for saying in this case the injury was the result of an unknown cause. In Zeis v. Brewing Association, 205 Mo. l. c. 651, this court gave a definition of the word and statement of what is to be considered in determining the question whether an injury is to be regarded as the result of an accident. "If after considering all the evidence in the case, offered by both plaintiff and defendant, and there is no evidence found of negligence, which resulted in the injury, then the injury is said to be the result of an accident. An accident is the happening of an event proceeding from an unknown cause." The subject is also discussed in Hoffman v. White Lime Co., 317 Mo. l. c. 102. We make reference also to what was said in Beauvais v. St. Louis Transit Co., 169 Mo. l. c. 506; Wise v. Transit Co., 198 Mo. l. c. 560. The part of the instruction referred to was not warranted by any evidence, and we think its only effect would have been to suggest to the jury their right to enter into the field of conjecture, as to the cause of the injury.

Complaint is made of the giving of plaintiff's Instruction 3. Two instructions were given at the request of the plaintiff, Instruction 3, and an instruction on the measure of damages. Instruction 3 is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the occasion in question the plaintiff was upon a scaffold which was then and there being used in and for the repair of defendant's building mentioned in evidence, then the court instructs you that the law required said scaffold to be well and safely supported, and of sufficient width and so secured as to insure the safety of persons working thereon, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon."

As to this instruction defendant, among other things, complains on the ground that the evidence conclusively shows that the plaintiff, himself, directed the manner of, and assisted in the work in the erection of the scaffold from which he fell, and therefore the statute cannot be invoked by the plaintiff, because it does not inure to the benefit of one who actually erected the scaffold complained of. Counsel for plaintiff insist it was not error to give this instruction, because, they say, plaintiff did not select the scaffold method, and the manner in which it was erected and secured; but, that both these matters were determined by defendant's superintendent. There is direct conflict in the testimony upon the question of fact assumed in these opposing contentions. Plaintiff testified that the superintendent directed the "staging" or swinging scaffold, to be used for this work. Defendant's superintendent denied he had directed plaintiff to use the swinging scaffold, and testified that he had told plain-

tiff that in painting signs, to use ladder jacks, and that within a week before the painting of the sign in question he had told plaintiff to use ladder jacks in the painting of this sign. This plaintiff is not in the situation of one who works upon a scaffold prepared for him by his employer. In his petition the first specification of negligence is the violation of the statute. The other charges of negligence are specific in character—failure to furnish any means to fasten the look-outs, failure to warn of danger, and giving an assurance of safety. The effect of this statute, and its application where the servant as a part of his employment erects the scaffold upon which he is himself to work and does work, is stated by GRAVES, J., in Williams v. Ransom, 234 Mo. 55, l. c. 71:

"This case is different from one where the principal has scaffolds erected, and then directs servants who have not participated in the erection thereof to go thereupon and work. Here there is evidence from which the jury could find that the plaintiff had a double duty to perform, i. e., (1) to construct a safe and suitable scaffold upon which to work, and (2) then to do the work required. With this dual duty imposed upon plaintiff, can it be said that he could be guilty of negligence in constructing the scaffold, and then hold his principal liable because he fell from a scaffold, which he himself helped to construct? We think not. If it was his duty to assist in the construction of the scaffold his situation would not be changed. Under the statute, the defendants had the right to hire Williams to make a scaffold from which he could work, as well as to hire him to work thereon. This under their evidence, they did. Justice has not been so far thwarted by this statute as to make it necessary to hold that although a servant is hired to build a scaffold and then work on the same, yet the master is liable to the servant, although such servant is negligent in constructing the scaffold."

Regard must be given to the purpose of the statute, as construed in the case just cited, and in Forbes v. Dunnavant, 198 Mo. l. c. 211:

"The primary object of this law was that scaffolding should be so safely built that others, having no part in its building and in nowise responsible for its safe construction, when called upon to use such scaffolding, might not be injured."

In the case at bar it is conceded that the plaintiff was to erect the scaffold to be used, and did erect the one actually used. The conflict is over the question of which form of scaffold he was to erect and use. He was to do this by assembling and properly connecting into a scaffold, the necessary materials or component parts to be furnished by defendant. Instruction 3 as given, ignores the fact that plaintiff erected the scaffold as a part of his work, and ignores issue in respect to a direction by defendant, or a choice by the plaintiff, as to the kind of scaffold to be erected. It follows the language of the

statute. It is true the instruction does not direct a verdict for the plaintiff; but, it hypothesizes the plaintiff as being upon the scaffold in question, and then told the jury that the law required "said scaffold" to be so constructed and secured, "as to insure the safety of persons working thereon." Counsel for plaintiff suggest that the court, at defendant's request, gave a number of instructions submitting the question of defendant's negligence in general terms, and requiring the jury to find that the defendant was negligent, "as defined in these instructions," in order to find in favor of plaintiff. The claim is that defendant thereby adopted the theory of plaintiff's Instruction 3, and cannot complain; but, that if more specific instructions were thought necessary, it was defendant's duty to offer such instructions. Defendant's Instruction 7 is as follows:

"The court instructs the jury that the defendant did not insure the safety of the plaintiff while he was working in defendant's employment, and did not guarantee that plaintiff would not be injured while working for defendant, and that, therefore, the plaintiff cannot recover in this case, unless you believe from the evidence under the instructions of this court, that the injuries to plaintiff were caused by defendant's negligence, as defined in these instructions."

We are unable to say this instruction adopted the theory of plaintiff's instruction. In effect, plaintiff's Instruction 3 told the jury that the law required the scaffold to be so constructed as to insure the safety of the plaintiff. It did so under the conceded fact that plaintiff constructed it; and, under plaintiff's evidence that plaintiff selected that kind of scaffold, and asked for no additional materials.

We think that so far as these instructions attempted to advise the jury they were conflicting in effect, misleading, and confusing. When the court told the jury by Instruction 3 that the law required said scaffold, that is, the scaffold upon which plaintiff was working, to be so secured, as to insure the safety of persons working thereon, the jury would understand from it that plaintiff's safety was to be insured, and that the duty to insure his safety as to the security of the scaffold, lay upon defendant. But, by defendant's Instruction 7 the jury was told that defendant did not insure plaintiff's safety while in defendant's employment, and that defendant was only liable if plaintiffs injury was caused by the negligence of defendant.

In view of the conceded fact that the plaintiff erected the scaffold himself, and under the construction given the statute in the cases cited, and under the conflicting evidence, Instruction 3 was misleading in itself. Furthermore, we have no means of knowing whether the jury found the defendant was guilty of negligence which caused plaintiff's injury, and based the verdict on that finding, or, whether they concluded, in view of plaintiff's Instruction 3, that because

plaintiff was upon a scaffold used in repairing defendant's building, the law required the defendant so to construct the scaffold as to insure the plaintiff's safety against the falling thereof, and therefore, defendant was liable in any event for the injury sustained through the falling of the scaffold. It is a case not of mere non-direction, but of misdirection of the jury, and in a matter materially affecting the merits of the action.

Error is also assigned, in that, the court admitted over defendant's objection, testimony that, as the result of his injury, plaintiff was unable to control the movements of his bowels and bladder. The objection is founded upon the theory that the petition did not mention this impairment of the functions of the bowels and bladder, and that it was not shown such impairment was the necessary result of the injury sustained by plaintiff. The question is somewhat close, but in consideration of the fact that under the conclusions heretofore reached, the cause is to be remanded, we will not lengthen this opinion by discussion of a point which need not appear upon another trial. It is also complained that the verdict is excessive. In view of the conclusion reached that question is not one now to be discussed.

For the reasons heretofore stated, the judgment is reversed and the cause remanded. *Seddon* and *Ellison*, CC., concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.