**CITY OF ST. LOUIS v. GRUSS et al.**

No. 43243.

Supreme Court of Missouri.
Division No. 1.

Jan. 11, 1954.

Gilbert Weiss, Rodney Weiss, St. Louis, for appellant.

James E. Crowe, James B. Steiner, Oliver T. Johnson, St. Louis, for respondent.

DALTON, Judge.

This is a condemnation proceeding. The issue for determination is the amount of damages resulting to the property of defend Catherine Dennis by reason of the change of grade of Gravois Avenue in the City of St. Louis, as required for the construction of an underpass to carry vehicular traffic under the right of way of the Missouri Pacific Railroad Company.

The plaintiff, City of St. Louis, is a constitutional charter city. Provision has been made in its charter for the condemnation of property for public purposes and it has elected to proceed in the manner therein provided. Article VI, Section 31, Const. of Mo.1945, V.A.M.S.; Section 88.073 RSMo 1949, V.A.M.S. The Commissioners of the Permanent Condemnation Commission of the City of St. Louis, to whom the issue of damages was referred and submitted, ascertained the amount of damages to the property of defendant Dennis to be $1325. No benefits were assessed. See Article XXI, Section 3, City Charter of the City of St. Louis. Defendant filed exceptions to the award of the commissioners and demanded a jury trial. A jury trial was denied and the exceptions were tried before a circuit judge in the manner and form provided by the Charter of the City of St. Louis, Article XXI, Section 7. On such review the court found the amount of the damages awarded to defendant to be reasonable and proper, the exceptions were overruled and the report of the Commissioners was approved and judgment entered. Defendant Dennis has appealed.

Prior to a review of the exceptions before the trial judge, the defendant filed an original proceeding in prohibition in this court to prevent such review. It was relator's contention that she was entitled to a trial of the issue of damages de novo before a jury of twelve persons under Section 523.060 RSMo 1949, V.A.M.S. This court held that, under Section 88.073 RSMo 1949, as revised and re-enacted in 1949, V.A.M.S., subsequent to the 1945 amendment of Section 523.060, "the Legislature intended * * * to restore to constitutional charter cities the right, if they so elect, to condemn property for public use and to assess damages and benefits in the manner provided by its charter." Our preliminary rule in prohibition was ordered discharged and a peremptory writ denied. State ex rel. Dennis v. Williams, 362 Mo. 176, 240 S.W. 2d 703, 705.

When appellant's exceptions to the Commissioners' award of damages came on for hearing in the circuit court of the City of St. Louis, appellant orally moved the court

for a jury trial and assigned as ground therefor that a denial of a jury trial to appellant would be a denial of the equal protection of the laws under the 14th Amendment to the Constitution of the United States. The request was denied. She subsequently assigned error on the same ground in her motion for a new trial.

Appellant now insists that "the trial court's denial of a jury trial * * * was error in that it constituted an arbitrary and unreasonable discrimination against appellant, and a denial of equal protection of the laws in contravention of the Fourteenth Amendment * * *."

At the time of said request for a jury trial, no specific provision of the City Charter was mentioned by appellant as denying her the equal protection of the law. No specific provision of the State Constitution, no state statute and no charter provision was pointed out as being unconstitutional by reason of the 14th Amendment and the same is true of the exceptions filed to the award and of the motion for a new trial filed after the award was approved. No specific state statute or provision of the State Constitution and no specific provision of the Charter of the City of St. Louis is now designated or attacked *under points and authorities* as being unconstitutional under the 14th Amendment to the Constitution of the United States, or as denying appellant the equal protection of the law.

Before discussing appellant's theory as appears from the printed argument in the brief, it is necessary to refer to certain constitutional, statutory and charter provisions.

Article I, Section 26, of the Constitution of Missouri 1945 provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law * * *."

Section 523.060 RSMo 1949, V.A.M.S. provides: "Any plaintiff or defendant, in-dividual or corporate, shall have the right of trial by jury of twelve persons, if either party file exceptions to the award of commissioners in any condemnation case." Amended in 1945, Laws 1945, p. 1072, § 1.

Section 88.073(2) RSMo 1949, V.A.M.S. provides: " * * * 2. Whenever the charter of any constitutional charter city makes provision for the condemnation of property for public purposes and assessment of benefits therefor, such city may elect to proceed with such condemnation or assessment, or both, in the manner provided in sections 88.010 to 88.070 or to proceed in the manner provided in its charter." RSMo 1939, Sec. 7240, Amended by revision in 1949, H.B. 2036. And see State ex rel. Dennis v. Williams, supra; Kansas City v. Dougherty, 361 Mo. 829, 237 S.W.2d 118.

Article XXI, Section 3, of the Charter of the City of St. Louis entitled, "Assessment of benefits and damages—Condemnation Commission," provides for the appointment by the judges of the circuit court of the City of St. Louis of "a permanent commission composed of three commissioners and three alternates, who shall be freeholders, resident in the city for five years next before the date of their appointment, for the assessment of damages and benefits in all condemnation proceedings." This section further, in paragraph six, provides: "Any party entitled to and desiring trial by jury of its rights to compensation shall file in the cause, before the assignment of the commissioners in each case, written demand therefor, including therein a description of its property to be taken or damaged, and failure so to do shall be a waiver of the right of trial by jury. Upon such demand being filed, the court shall award a jury trial and proceed therewith as in trial of civil actions; but before final judgment shall be rendered on the verdict of the jury and before the commissioners shall make their report, the court shall certify the verdict of the jury to the commissioners, and they shall include in their report, with their separate findings, assessments and awards, the damages as assessed by the jury, reciting the fact. * * *."

Article XXI, Section 7, of the Charter of the City of St. Louis entitled "Exceptions to report of condemnation commission," provides: "Within twenty days from the filing of the commissioners' report, exceptions in writing thereto may be filed by any party interested, and upon such exceptions the court shall review the report, and may order, on cause shown, a new assessment by said commission under additional instructions of the court, or by a commission composed of the three alternate commissioners hereinabove created, or make such other orders thereon as justice may require. The court shall hear and dispose of such exceptions with all reasonable speed, and may itself assess benefits anew."

In the printed argument in appellant's brief, appellant for the first time attempts to make a direct assault upon Article XXI, Section 3, of the Charter of the City of St. Louis, as being "unconstitutional, in that it is a denial of equal protection of the laws within the meaning of that clause in the Fourteenth Amendment of the Constitution of the United States." Appellant contends that said article and section "denies the equal protection of the law to an individual in condemnation proceedings * * * by denying to an individual a trial by jury for the determination of damages, while at the same time conferring an unqualified right to a jury trial on all corporations." Appellant says that she complains of this classification as arbitrary and unreasonable and as denying the equal protection of the law, because "it is a classification of all landowners within the city * * * into two classes: those who have assumed the corporate form and those who have not"; that "this classification is found in Article XXI, Section 3 of the City Charter, which provides in part: 'Any party *entitled to* and desiring trial by jury of its right to compensation * * *'"; and that "the pivotal words are 'entitled to', for by Article XI, Section 4, of the Constitution of 1945, only corporations are 'entitled to' jury trials as a matter of right in condemnation proceedings."

Appellant's argument further proceeds as follows: "It should first be noted that this classification between corporations and all other landowners is not in the true sense a classification, but in actuality an arbitrary discrimination against all landowners not a corporation. That is, Article XXI, Section 3, of the City Charter does not say that damages in eminent domain proceedings in the case of a corporation shall be determined by jury and damages to all other landowners by a condemnation commission; rather the City Charter accords to corporations, and corporations alone, the right to elect whether their damages shall be determined by a jury or the Commission. In other words, the City Charter cannot in any manner be said to place a burden or restriction on corporations as distinguished from all other landowners, but rather it confers a unique and valuable right upon corporations while denying the same to all others * * *. A state may not, in condemnation procedure, prescribe certain rights and benefits to one and deny the same to another similarly situated. The question thus arises, and this is the ultimate question to be determined, whether the persons concerned within Article XXI, Section 3, of the City Charter are similarly situated or is there a distinction which justified the classification."

█ It clearly appears from appellant's brief that appellant's theory of the denial of the equal protection of the laws to appellant is based upon the alleged unconstitutionality of Article XXI, Section 3, of the Charter of the City of St. Louis under the 14th Amendment to the Constitution of the United States, but, as stated, the unconstitutionality of this provision of the City Charter was not mentioned or attacked in the trial court. Nor does it appear from the transcript of the record presented that appellant has in any manner proceeded or undertaken to proceed under or to comply with the provisions of Article XXI, Section 3. Appellant did not ask a jury trial under said section, nor contend below that such section denied her any such right. Any rights under said section were waived.

City of St. Louis v. Franklin Bank, 340 Mo. 383, 100 S.W.2d 924, 926.

Appellant's argument might equally be construed as an attack upon Article XI, Section 4, of the Constitution of Missouri as being unconstitutional under the 14th Amendment to the Constitution in that it grants jury trials in condemnation cases to corporations without specifically granting the same right to individuals, but appellant's theory in this case is that Article XI, Section 4, of the Constitution of Missouri 1945 is valid and that, therefore, Article XXI, Section 3, of the Charter of the City of St. Louis is invalid. Appellant says she has no quarrel of any nature with Article XI, Section 4, of the Constitution of Missouri "in respect to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States." It is only upon the theory that Article XI, Section 4, of the Constitution of Missouri is valid under the 14th Amendment to the Constitution of the United States, and that Article XI, Section 4, means what appellant construes it to mean, that appellant is able to arrive at the conclusion that Article XXI, Section 3, of the City Charter is unconstitutional as denying the equal protection of the laws to appellant. However, we do not find that this court has held that a corporation is entitled to certain rights and the benefits of certain modes of procedure and that an individual similarly situated is not entitled to them. See Backus v. Fort Street Union Depot Co., 169 U.S. 557, 570, 571, 18 S.Ct. 445, 42 L.Ed. 853; and McClung v. Pulitzer Pub. Co., 279 Mo. 370, 214 S.W. 193.

 Appellant may not be heard to urge the unconstitutionality of Article XXI, Section 3, of the Charter of the City of St. Louis for the first time in this court. The general rule is that such a question if not raised in the trial court will not be considered on appeal. City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 378; Wabash R. Co. v. City of St. Louis, 8 Cir., 64 F.2d 921, 929. The invalidity of a statute cannot be asserted for the first time on appeal. Sloan v. Polar Wave Ice and Fuel

Co., 323 Mo. 363, 19 S.W.2d 476, 477; Laret Inv. Co. v. Dickmann, 345 Mo. 449, 134 S. W.2d 65, 70. The same rule applies to a charter provision of the City of St. Louis. Wabash R. Co. v. City of St. Louis, supra. The issue as to the unconstitutionality of Article XXI, Section 3 of the Charter of the City of St. Louis is not before us for review. Nor does it appear that appellant was denied a jury trial by reason of the provisions of said charter, nor has appellant been denied the equal protection of the laws. The assignment is overruled.

Appellant further says "the court erred in not declaring that appellant was entitled to have her damages assessed by a commission of three freeholders without regard to qualifications and occupation"; and that "the trial court erred in not declaring that the creation of the Permanent Condemnation Commission by the City of St. Louis, with its attendant restrictions was void as a legislative invasion of the powers of the judiciary."

Appellant's theory is that the commission "operated not as a trier of fact, but operated as a judicial body and that the limitations placed upon the Court by the City Charter are legislative encroachments upon the powers of the judiciary." Appellant particularly attacks certain provisions of Article XXI, Sections 3 and 7 of the City Charter. These specific provisions were not mentioned in the exceptions filed to the Commissioners' award, they were not specifically designated when oral objections were made to a review of the exceptions before the trial judge and they were not specifically so designated in the motion for a new trial. Clearly no objections of any kind appear in this record concerning the legality of the Permanent Condemnation Commission until after the issue of damages had been submitted to the Commission and the Commission had filed its report. Accordingly, the record presented does not support either of these assignments. Appellant made no such objections to the submission of the issue of damages to the Permanent Condemnation Commission. After the issue had been so submitted and after the

commissioners had made and filed their report in the cause, and had fixed appellant's damages at $1325, and after such report was a part of the record in this case, appellant filed her exceptions to the report of the commissioners, but in said exceptions she complained solely and alone of the amount of the damages, to wit, "that the damages so assessed are greatly inadequate and are not just compensation to defendants for the damages done to the lands described above." Appellant requested a re-assessment of the damages by a jury.

When the exceptions came on for hearing before the circuit judge, appellant for the first time, in so far as this record shows, objected as follows: "We now move that all of the proceedings before the Permanent Condemnation Commission be declared void and null again under the constitutional provision that provides that for the taking and the assessment of damages in condemnation, that it shall be triable by a jury or by three freeholders; that the Permanent Condemnation Commission does not fall within the constitutional provision of three freeholders. It becomes a professional trier of fact; it becomes, not as a jury but as a judicial body and that it is not within the constitutional provision of a jury of three freeholders, because under all jury requirements, all concepts of jury, they must be taken from the area in which the case is tried; and that the Permanent Condemnation Commission does not fall within any classification or any theory of a jury trial, and a proceeding before it is null and void and can never have the force and effect of a jury of three freeholders. * * * I am not contending that they are not freeholders. I will admit that each one of the members of the Condemnation Commission owns some parcel of real estate in the City of St. Louis, but it's the underlying theory back of the appointment."

■ All matters connected with the assessment of damages by the Permanent Condemnation Commission were fully in the record without objection or complaint, prior to this oral objection in open court made immediately prior to the review of the report by the circuit judge. It was then too late to object to the report on the grounds stated. The sole remaining issue was the issue of damages and whether or not appellant was entitled to a trial de novo before a jury of twelve men or to a review of the award before the judge as provided by Article XXI, Section 7, of the City Charter. The latter issue had been theretofore specifically ruled in State ex rel. Dennis v. Williams, supra. And see Kansas City v. Dougherty, supra.

Appellant strongly urges a re-examination of these cases and their holdings but, in view of the fact that the decision of the court en banc in State ex rel. Dennis v. Williams was unanimous, we feel that a re-examination of these cases at this time is not required.

Appellant further contends that, under the evidence adduced, appellant was entitled to a reversal of the award.

The condemnation petition for change of grade of Gravois Avenue from Meramec Street to Taft Avenue was filed September 20, 1940, pursuant to Ordinance No. 41863, approved June 25, 1940. The ordinance contained an emergency clause and was effective June 25, 1940, which is admitted to be "the date of valuation herein." The ordinance incorporates Order No. 449 of the Board of Public Service of the City of St. Louis fixing the change of grade in Gravois Avenue. At the place in question Gravois Avenue is 108 feet wide, but the underpass was to be and was constructed only 72 feet wide.

Appellant's property fronts 39 feet on Gravois by 110 feet, 9½ inches, on Bethoven. The change of grade on the north line of appellant's property (if such line is projected eastwardly to meet the underpass at a right angle) is six feet, and the change of grade on the south line of appellant's property (if such line is projected eastwardly to meet the underpass at a right angle) is four feet, making an average of five-foot change of grade that affects appellant's property along the underpass.

On either side of said underpass are two flanking roadways, each eighteen feet wide. Said roadways, often called side or upper drives, are paved and there is no change in grade on or affecting said roadway or side drive in front of appellant's property. There were two store buildings on the property, both facing Gravois. One a one-story and the other a two-story building with a flat on the second floor.

Appellant testified in her own behalf that she had owned the real estate in question for some thirty years. She fixed its value in June 1940 at from $12,000 to $13,000 and after the construction of the underpass at $5,000. Her son fixed its value in June 1940 at $10,000 to $12,000 and its value after the construction at $4,000. This witness reviewed at length the history of the property for many years and the rents received from it, to wit, $140 per month prior to 1939 and prior to news of the proposed improvement, as compared with $44 while construction work was in progress, and prior to 1943, and with variable rental income since that date from $15 to $70 per month depending upon what part of the property was occupied. The witness also testified concerning general conditions affecting the rental value of the property before and after the improvement, including the accessibility of the property to automobile traffic on Gravois before construction and its present inaccessibility, a part of which inaccessibility results from the imposition of one way traffic on "the upper drive" in front of the property.

It is apparent from the record that the witness considered damages resulting from the exercise of the city's police power subsequent to the construction of the underpass. See City of Clayton v. Nemours, 353 Mo. 61, 182 S.W.2d 57, 59; Max v. Barnard-Bolckow Drainage Dist., 326 Mo. 723, 32 S.W.2d 583, 586; Gorman v. Chicago B. & Q. R. Co., 255 Mo. 483, 493, 164 S.W. 509.

Another witness, who gave his occupation as an appraiser or valuation man with wide experience estimated the damages from the change of grade and the construction of the underpass at from $3650 to $8329. This witness testified concerning the size and reproduction cost of the improvements, depreciation, expectancy, land values and other factors. He also estimated damages using capitalization methods based on rents received, as testified to by the prior witness, showing a decrease from $140 per month to $64 per month average. He fixed the land value at $100 per front foot before the improvement, as compared with $35 per front foot after. It was his opinion that the property was no longer adaptable to business use because it was no longer on an arterial highway, but was now suitable only for low cost housing.

Respondent offered two witnesses. One, who was engaged in the real estate business and who had done appraisal work, testified that the property had not been damaged, but helped in getting away from heavy through traffic; that the property was only suitable for retail store purposes such as a neighborhood grocery or drug store; that there was a street in front of it wide enough for automobiles to drive up and stop in front of the store; and that the property was accessible to automobile traffic. He said that arterial highway traffic did not help retail stores because most of the traffic was through traffic. He fixed the age of the two-story building at 50 years and said it was now in bad repair.

Another witness, who said he was a real estate appraiser and consultant, fixed the value of the property (land and buildings) at $9,750 in June 1940. He further estimated the land value at $2,900 and the depreciated value of the buildings at $6,773.58. In his opinion the change of grade in Gravois Avenue had no adverse effect on the value of the property, but he thought the property was slightly benefited. He thought that the lack of good management and lack of proper maintenance had a bearing on the rental income from the property. He didn't think people would use their cars to trade at this store and he said the property's trade area was not across Gravois Avenue. He didn't think there was very much inconvenience, if any, of access to the property by vehicles even though such vehicles

should follow the directions fixed for one-way traffic on the upper drive. This witness had examined the property some nine years after the underpass was constructed. When cross-examined concerning the use of capitalization methods, of which he did not approve, the witness found that $140 per month rent would show a value of $7,633.55 and $64 per month would show $2,276.50.

■ The trial judge saw and heard these several witnesses, he heard them testify both on direct and cross-examination, he was familiar with their qualifications and was in a far better position to judge of their credibility and of the weight and value to be given to their testimony than we are. Not only did the trial judge listen to the testimony, but from time to time, he questioned the witnesses and at the conclusion of the hearing the court reviewed the factual situation at length and held that appellant had failed to show the award of the Commissioners was not a reasonable allowance. He pointed out that there was an absence of proof to convince the court of any mistake, fraud or anything of that kind, or any lack of a proper assessment of the damages. The exceptions were then overruled and the original report of the Commissioners was confirmed.

■ From a careful review of the record in this case, and giving due deference to the trial judge's findings as based on the credibility, weight and value of the oral testimony of the witnesses appearing personally before him, we find no error in the conclusions reached. Clearly the damages awarded by the Commissioners were not so grossly inadequate as to indicate an abuse of discretion or any arbitrary action on the part of the trial judge in holding that the award was reasonable and proper. City of St. Louis v. Franklin Bank, Mo.Sup., 100 S.W.2d 927, 929; City of St. Louis v. Franklin Bank, 340 Mo. 383, 100 S.W.2d 924, 927; City of St. Louis v. Franklin Bank, 341 Mo. 913, 110 S.W.2d 734, 736.

The judgment is affirmed.

All concur.