WILLIAM SCUDDER v. ST. JOSEPH BELT RAILWAY COMPANY, Appellant.—92 S. W. (2d) 138.

Division One, March 10, 1936.

*Stringfellow & Garvey* for appellant.

*Mytton, Parkinson & Norris* for respondent.

COLLET, J.—Appeal from an order of the Circuit Court of Buchanan County sustaining a motion for new trial. About six A. M. on February 27, 1932, William Scudder was driving east on what is known as Lake Road near St. Joseph, Missouri, when he was struck by an engine operated by the defendant. This action arises from the injuries he there received. Lake Road ran east and west and the defendant's tracks north and south, Lake Road crossing the

tracks. According to the plaintiff's version of the accident, as he approached the tracks he slowed down to ten or fifteen miles an hour, changed to second gear and proceeded across the tracks. He says that the crossing was in very poor repair, having a number of chuckholes and worn crossing planks in it so that when the front wheels of his light delivery truck crossed the west rail of the track one or both of them fell into a chuckhole or chuckholes, causing his engine to die and the truck to stall with the front wheels slightly east of the east rail and the rear wheels between the two rails of the track. He says that as his truck came to a stop he looked up and saw the defendant's engine approximately thirty or forty feet away backing toward him from the north at a speed of some four or five miles per hour; that there were no lights on the back of the engine tender, no whistle was sounded, no bell was rung, and that he saw no man on the rear of the tender. He says he undertook to start his engine but was not sure whether it started or not—he thought it did not. He was not successful in getting the truck off the track and the left corner of the rear of the tender struck the left rear of the truck throwing it off the track and overturning it, seriously injuring him.

According to defendant's evidence the engine whistled four times approximately 300 or 400 feet north of the crossing and again twice approximately seventy-five feet north of the crossing; that the engine was equipped with an automatic bell which was ringing as the engine approached the crossing; that the rear of the tender was equipped with a headlight which was burning brightly at the time; that two brakemen were standing upon the footboard on the rear of the tender; that the brakeman standing on the west end of the footboard and the fireman in the west side of the cab saw plaintiff's automobile approaching the crossing from the west at a speed of from fifteen to twenty miles per hour and supposed that plaintiff would stop when he got to the crossing but instead of doing so they say that when the engine was approximately half way across the crossing plaintiff undertook to swerve around the engine without slowing down, but failed to entirely clear the engine, resulting in the left-hand corner of the left rear of his truck striking the left rear corner of the tender and causing his truck to turn over. The brakeman who was riding upon the left or east end of the footboard on the rear of the tender, jumped off the footboard to avoid being injured.

Plaintiff's petition charged that the defendant was negligent in maintaining the crossing with chuckholes in it; in failing to give proper signals; in failing to maintain a light on the rear of the tender; and in failing to stop the engine or check its speed when, by doing so, the injury would have been avoided; or, in other words the

petition charged the defendant with primary negligence and also charged negligence under the humanitarian doctrine. The case was submitted to the jury upon both theories. A verdict was returned for the defendant. Plaintiff's motion for a new trial was sustained by the trial court upon the ground that error had been committed in the giving of defendant's Instruction S. From that order defendant appealed. Instruction S is as follows:

"S. The court instructs the jury that if you believe from the evidence that the crossing did not have chuckholes in it but was in such condition so that it did not cause plaintiff's motor to die and his automobile to stop on said track, then your verdict will be for the defendant."

The sole question presented by appellant is the propriety of the action of the trial court in the giving of that instruction. Appellant concedes that when both primary negligence and the violation of the humanitarian doctrine are charged and there is evidence of both and both issues are submitted to the jury, it is ordinarily improper to give an instruction directing a verdict for the defendant upon a finding of the absence of the primary negligence charged, without any reference in the instruction to the assignment of negligence under the humanitarian doctrine. But appellant asserts that in this case the presence of chuckholes were necessary to a recovery under either the charge of primary negligence or the humanitarian doctrine and that therefore the giving of Instruction S was not error. In support of this position appellant argues that the petition does not charge negligence in failing to stop the engine or check the speed when appellant observed, or should have observed, the respondent's truck stalled upon the crossing, but depends upon appellant's failure to stop the engine or check its speed when it knew respondent was likely to stall upon the crossing because of the chuckhole. It is argued that the petition therefore made the existence of chuckholes necessary to the existence of appellant's responsibility under the humanitarian rule. The petition states:

"That while plaintiff was so driving said motor vehicle at the time aforesaid, and as it approached and went up on said railroad track at said point, he and said motor vehicle were in and going into a position of imminent and helpless danger and peril of being struck and injured by said engine, and that while plaintiff was so in and was going into and was about to go into said position of imminent and helpless peril at said crossing, the defendant saw and knew or by the exercise of ordinary care on its part could have seen and known that plaintiff was so in and going into and about to go into said position of imminent and helpless peril and danger in time (to have) by the exercise of ordinary care to have stopped said engine or checked the speed thereof or caused the same to be done, or given a warning signal or caused the same to be done, and

thereby have prevented the striking of plaintiff and said motor vehicle and the injuring of plaintiff, but that the defendant failed to do so or to do either thereof, and that as a direct and proximate result of said negligence and failure so to do, said train was caused to and did collide with said motor vehicle and the plaintiff, thereby striking, throwing and dragging plaintiff with great and unusual force and violence and injuring him as hereinafter set out.''

The above charge makes no reference whatever to the cause of respondent's position of imminent peril and does not charge that appellant failed to stop or check the speed of its engine when it observed the plaintiff approaching the crossing which the defendant knew to be in bad repair and dangerous, but charges that appellant saw or should have seen respondent, in a position of imminent peril, about to go into and going into such position, and as a result of the failure to slow down or stop the engine the injury resulted. The petition does not support appellant's argument. Plaintiff's instruction authorizing a recovery under the humanitarian doctrine followed the petition. Therefore the case was submitted to the jury upon the question of defendant's negligence under the humanitarian rule without regard to the cause of plaintiff's position of peril. Under such circumstances an instruction directing a verdict for defendant upon the assignment of primary negligence should not ignore plaintiff's right to a recovery under the humanitarian doctrine.

The failure so to do is not cured by the giving of a proper instruction defining defendant's liability under the humanitarian rule, since an instruction presenting the humanitarian doctrine and Instruction S, as above quoted, each standing alone, each authorizing a verdict, and neither referring to the other, creates a conflict and are confusing and misleading to the jury. [Mott v. Chicago, R. I. & Pac. Ry. Co. (Mo. App.), 79 S. W. (2d) 1057; Millhouser v. K. C. Pub. Serv. Co., 331 Mo. 933, 55 S. W. (2d) 673.]

Cases like Krelitz v. Calcaterra (Mo.), 33 S. W. (2d) 909, cited by appellant, where only the issue of the defendant's primary negligence was presented to the jury, are not in point for the obvious reason that the humanitarian doctrine not being an issue an instruction for defendant authorizing a verdict in the absence of primary negligence need not contain a qualifying clause referring to the humanitarian doctrine.

Neither is the case of Schroeder v. Wells, 310 Mo. 642, 276 S. W. 60, controlling here. In that case no issue was raised concerning the fact as to whether the defendant could have stopped its street car with safety to its passengers. It was held that an instruction which did not require the finding by the jury of this fact which was not an issue was not erroneous. The distinction between that case and the one before us lies in the fact that there the sub-

stance of the omitted qualifying clause was not an issue and here the omitted qualification related to one of the grounds of recovery presented. The circumstances involved in this case distinguish it from the cases of Carle v. Akin (Mo.), 87 S. W. (2d) 406, and Dean v. Moceri (Mo. App.), 87 S. W. (2d) 218.

We are asked to reverse this judgment and order the reinstatement of the jury's verdict upon the ground that the verdict was for the right party and should stand regardless of any error in defendant's Instruction S. To do so would require the formal finding on our part that the plaintiff's testimony was unworthy of belief for, as pointed out above, if his testimony be true he made a submissible case. It is impossible for us to say what the jury's verdict might have been had the erroneous instruction not been given. And, since we did not have an opportunity to make the observations which the jury and the trial judge could and did make of the defendant's demeanor as a witness, and hence are unable to as intelligently pass upon his credibility as the trial judge and the jury were able to do, we are unwilling to say that plaintiff's testimony was entirely unworthy of belief. Undoubtedly his testimony and the testimony of the defendant's witnesses who also saw the accident cannot both be true. But, as indicated above, we cannot, at this distance and from an examination of the "cold record" be as well able to pass upon the truth of the facts given in evidence as the proper triers of the fact.

The judgment of the trial court should be affirmed and the cause remanded. It is so ordered. All concur.