RICHARD W. PHILLIPS, Appellant, v. CLAUDE E. VROOMAN and EDWIN M. LEBow, Respondents, No. 42156—238 S. W. (2d) 355.

Division One, April 9, 1951.

*Lyman Field* and *Rogers, Field & Gentry* for appellant.

1100

*Harold T. VanDyke, Albert Thomson* and *Johnson, Davis, Thomson, VanDyke & Fairchild* for respondents.

[356] VAN OSDOL, C.—Action for $25,000 damages for personal injuries sustained in an airplane crash near the South Bend Airport at South Bend, Indiana, when plaintiff, Richard W. Phillips, was riding in a small single-wing, four-passenger airplane piloted by defendant, Claude E. Vrooman, acting for the owner, defendant Edwin M. LeBow. The jury returned a verdict for defendants, and plaintiff has appealed from the ensuing judgment.

Plaintiff-appellant assigns errors of the trial court in the giving of instructions, and in permitting defendants' counsel to argue to the jury matters outside the issues of the cause.

Plaintiff had alleged and the trial court submitted defendants' negligence in continuing the flight of the plane after the motor [357] had misfired during or shortly after the "take-off." It is plaintiff's theory that defendants could and should have discontinued the flight when the motor misfired, at which time, according to plaintiff's evidence, there was yet runway space for the plane to have been brought to safety upon the runway at the airport.

The part of the plaintiff's principal Instruction No. 1 submitting negligence of defendants is as follows,

"The court instructs the jury that if you find and believe from the evidence that - - - in the take-off run and - - - while said plane was being so operated down the runway and before or just as the plane started to leave the ground the motor on said plane began to misfire - - - and that the defendants, in the exercise of ordinary care, should have known of this condition - - - and if you further find that with the motor misfiring - - - the plane would be dangerous and not reasonably safe to - - - fly because of the likelihood - - - of the motor continuing to misfire - - - while in flight and to thus cause the plane to fall and crash - - - away from the airport - - - and if you find that the defendants, in the exercise of ordinary care, should have known of such fact - - - and that at said time there was sufficient length of runway ahead within which to have throttled back, braked and stopped said plane with safety - - - but that the defendants negligently and carelessly - - - failed so to do, and continued to operate said plane - - - *or*, if you find that shortly after the plane left the runway and became airborne and while there was still sufficient distance of runway ahead - - - to have taken the plane back down on the runway and safely stopped it, the motor of said plane continued to misfire - - - and that the defendants, in the exercise of ordinary care, should have known of such condition - - - and if you further find that as a result thereof the plane was dangerous and not reasonably safe to continue in flight - - - because of the likelihood - - - of the motor continuing to misfire - - - and to thus cause the plane to fall and crash - - - away from the airport, and if you find that in the exercise of ordinary care defendants

should have known such fact - - - but that the defendants negligently and carelessly - - - failed to take said plane back down on the runway - - - and if you further find that as a direct result of such negligence and carelessness - - - *in either of the foregoing particulars,* when said plane got away from the field the motor continued to misfire - - - to the extent that it was necessary for defendants to crash-land the same in a field and that the plaintiff Phillips, as a direct result thereof, was injured - - - your verdict will be in favor of plaintiff - - -." (Our italics.)

Plaintiff had stated other specific negligence of defendants in taking the plane into the air without having it properly checked, it being alleged the motor of the plane "had been missing fire badly and not functioning properly previous to the take-off." It is important to note plaintiff did not request the submission of and so abandoned the latter theory of defendants' negligence.

There was substantial evidence introduced tending to show the motor of the airplane started to misfire in the take-off to the westward and while the plane was yet moving on the concrete east-west runway, and was yet 2500 feet from the west end of the runway. Within that distance, the plane could have been throttled back, braked and safely stopped on the runway. The motor continued to misfire intermittently. It misfired after the plane became air-borne and was only 25 feet above the surface of the runway and was yet 1500 feet from the west end thereof. It could have been throttled back, landed, braked and safely stopped upon the runway within the 1500 feet remaining.

When the motor of an airplane misfires, the flight should be terminated if possible. An airplane should not be taken off the ground if the motor is "missing," because there is a likelihood of the motor continuing to miss when the plane is air-borne, with resulting loss of power culminating in a forced landing.

[358] Defendants introduced evidence tending to show the misfiring of the motor did not occur until after the plane became air-borne and had attained an altitude of about 300 feet, and had moved about a fourth of a mile from the airfield. There, the motor misfired and lost power, and then "another cylinder had gone out." The defendants could not have thereafter brought the plane back upon the runway in safety. They were obliged to bank into the wind and glide, shut off the gas, recover, and bring the craft to a "pan-caked" crash landing.

Before reviewing the assignments of error in instructing the jury, we will examine the contention of defendants-respondents that plaintiff did not make out a submissible case and the trial court erred in overruling defendants' motion for a directed verdict. It is contended plaintiff testified contrary to his theory of defendants' liability and is not entitled to recover, being bound by his testimony which, unexplained, amounted to a judicial admission, prima facie binding and

conclusive. Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S. W. 177; De Lorme v. St. Louis Public Service Co., Mo. App., 61 S. W. 2d 247. If, under the law and the evidence, plaintiff did not make out a case for the jury the giving of erroneous instructions could not have been prejudicial. O'Dell v. Dean, 356 Mo. 861, 204 S. W. 2d 248.

Plaintiff testified that he "didn't hear anything wrong with the motor until after we actually got into the air, and then the motor started sputtering and backfiring." He first heard the sputtering when the plane was "off the ground - - - I would say 200 feet." Plaintiff also testified he had perforated eardrums, diminishing his hearing—"very much so."

Plaintiff did not positively testify the motor did not misfire until the plane had attained an altitude of two hundred feet; he said he "didn't hear" the misfiring before the plane had attained the stated altitude. His testimony was negative, not positive, in character. He was merely riding in the plane. He had no assigned duty in operating the plane which would have made him particularly attentive to the functioning of the motor. (Other witnesses for plaintiff gave testimony, positive in character, supporting plaintiff's theory of defendants' liability.) Plaintiff's stated disability—his defective hearing—could be considered as an explanation of his failure to hear the motor "sputtering," if it did, while the plane was on the runway or at a low altitude from which it could have yet been safely landed on the runway. We regard plaintiff's testimony as an inconclusive admission—one not within the rule which defendants-respondents seek to invoke. Compare Clapper v. Lakin, 343 Mo. 710, 123 S. W. 2d 27.

At the request of defendants the trial court gave Instruction No. 6, an "accident" instruction, as follows,

"You are further instructed that, if you believe and find from the evidence that the injury to plaintiff was caused by an accident, mischance, or misfortune, and not due to any negligence on the part of the defendants, then the plaintiff is not entitled to recover, and your verdict must be in favor of the defendants."

It is our opinion the giving of this instruction was prejudicially erroneous. The issue was defendants' negligence in the circumstances. Defendants assert, in effect, that the instruction was a proper one upon the theory that plaintiff's injury was the result of the motor's misfiring, the cause of which misfiring was unknown. There is (because of the conflicting evidence as to the time when the motor began to fail) some question as to whether defendants could have brought the plane safely to a stop on the runway, that is, there is, because of the conflicting evidence, some question defendants, in the exercise of due care, could have averted the casualty. But there is no doubt about what happened to the airplane. Its motor misfired. Defendants brought the plane to earth in a crash landing. The negligence of de-

fendants as hypothesized in Instruction No. 1 was the continuation of the craft's flight after the motor thereof had begun to fail. The motor did misfire. So one vital supporting issue was—*when* did the motor begin to misfire, not why it misfired. **[359]** Neither the plaintiff nor defendants questioned the fact that the motor misfired. The failing of the motor, in so far as the submission of defendants' negligence in the instant case was concerned, was a fact, an event, or a circumstance attending the casualty; and the question was—after the motor misfired, should and could defendants, in the exercise of due care, have discontinued the flight and brought the airplane to safety on the runway. The event, the misfiring of the motor, was, in a sense, a cause of the casualty. But it was a known cause. Compare Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S. W. 2d 707.

Had there been no motor trouble, there would have been no crash landing. The misfiring of the motor, a known event or circumstance, may be considered a "cause" of the casualty, whether or not its *quality* as being due to someone's negligence was known or unknown. Witnesses said, "innumerable things" can cause a motor to misfire. But something without human fault, or a negligent act of commission or omission, if so, resulting in the misfiring of the motor was immaterial and of no significance under the issues of the instant case. Plaintiff had alleged, and the trial court submitted a proximate *cause* of the casualty, that is, negligence in failing to discontinue the flight *after* the motor had misfired. If defendants could and should, in the exercise of due care, have brought the plane up and safely landed it after the motor misfired, and failed to do so, it could be reasonably said such failure was negligence and was a proximate cause of the casualty, even though some other cause, known or unknown, negligent *vel non,* concurred therewith in bringing about the casualty. Semar v. Kelly, 352 Mo. 157, 176 S. W. 2d 289; Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. 2d 163; Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 93 S. W. 951; 38 Am. Jur., Negligence, § 65, pp. 719-720. But, as stated, the circumstance or event, the misfiring of the motor, considered as a cause, was a known cause of the casualty.

The Instruction No. 6 did not hypothesize the failure of the motor as the sole proximate cause of the casualty and negative defendants' negligence as hypothesized in plaintiff's Instruction No. 1; nor did the instruction hypothesize facts which supported by evidence, and if found to be true, would demonstrate that some person or agency other than defendants was "the sole author" of the casualty. Semar v. Kelly, supra; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. 2d 373. The Instruction No. 6 hypothesized "accident, mischance, or misfortune." Thus was the jury permitted to confuse the issues, and

speculate upon some imponderable or immaterial factor as the sole proximate cause of the casualty.

It has been said that when the cause of a casualty is known it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown, on the theory that the contrary and more abstract course would confuse the jury.   Hogan v. Kansas City Public Service Co., supra, and cases therein cited; Sloan v. Polar Wave Ice & Fuel Co., 323 Mo. 363, 19 S. W. 2d 476; Wright v. Quattrochi, 330 Mo. 173, 49 S. W. 2d 3; Mitchell v. Dyer, Mo. Sup., 57 S. W. 2d 1082; Kaley v. Huntley, 333 Mo. 771, 63 S. W. 2d 21; Brewer v. Silverstein, Mo. Sup., 64 S. W. 2d 289; Wilson v. Chattin, 335 Mo. 375, 72 S. W. 2d 1001.

At the instance of defendants the trial court gave Instruction No. 7 said by defendants-respondents to be a submission of the con-verse of plaintiff's principal Instruction No. 1, which Instruction No. 7 is as follows,

"If you find that the defendants Vrooman and LeBow did not know that there was a likelihood that the plane would crash at the time it was taken off the ground - - - nor in the exercise of reasonable care could the defendant (sic) have known that there was a likelihood that the plane would crash at the time it was taken off the ground -   -  - then your verdict must be in favor of the defendants and against the plaintiff."

Plaintiff-appellant asserts the instruction is erroneous in that it "sets up in the *alternative* [360] or *disjunctive,* and not in the conjunctive, two separate issues of defense," and thus authorized the jury to find in favor of defendants and against plaintiff if the jury believed defendants "did not know" there was a likelihood the plane would crash, even though in the exercise of reasonable care defendants could have known.   We do not entirely agree with appellant's contention of error in the instruction in this respect.   Although the language is involved, the instruction hypothesized the first submission in the negative—"If you find that the defendants - - - did not know - - -."   By the use of the conjunctive, "nor," the hypothesis continued the force of the negative in its application to the second of the submissions.   See "Nor," Webster's International Dictionary, 2d Ed., pp. 1664-1665.   But we believe the instruction in at least one respect was prejudicially erroneous.

The instruction directed a verdict for the defendants if the jury believed that defendants neither knew nor in the exercise of reasonable care could have known there was a likelihood the plane would crash "at the time it was taken off the ground."   The instruction ignored the submission, in plaintiff's Instruction No. 1, that defendants in the exercise of ordinary care should have known, because of mis-

firing, there was a likelihood the plane would crash, and should have discontinued the flight "after the plane left the runway and became airborne and while there was still sufficient distance of runway ahead - - - to have taken the plane back down - - - and safely stopped it." The Instruction No. 7, directing or authorizing a verdict for defendants, was erroneous in ignoring an issue, and circumscribing the submissible and submitted factual bases for plaintiff's recovery. Scudder v. St. Joseph Belt R. Co., 338 Mo. 492, 92 S. W. 2d 138; Mengel v. City of St. Louis, 341 Mo. 994, 111 S. W. 2d 5; Hensley v. Dorr, Mo. Sup., 191 S. W. 2d 663; Vol. 1, Raymond, Missouri Instructions to Juries, §§ 96-97, pp. 82-84.

█ It is unnecessary to examine the assignments of error in giving an instruction on "physical facts," or the assignment of error in the language of the "burden of proof" instruction. Counsel may consider the assertions of error; and the errors, if any, may be avoided upon retrial. However, a "physical facts" instruction may be given in the trial court's discretion where pertinent, that is, where testimony of a witness or witnesses is in apparent conflict with physical facts so that the matter is properly for the consideration of the jury. Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S. W. 472; Ogilvie v. Kansas City Public Service Co., Mo. App., 27 S. W. 2d 733. And it has been written, a "short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do. A plain declaration to that effect will be easily understood by a jury." Mitchell v. Dyer, supra, 57 S. W. 2d at page 1083; Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. 2d 58. In view of what has been said of the issues submitted, it is also unnecessary to discuss assigned error in the trial court's rulings upon argument of defendants' counsel. While the field of argument is a broad one, argument should be confined to the evidence supporting the issues pleaded and submitted, and the inferences which may be properly drawn therefrom. Amsinger v. Najim, 335 Mo. 528, 73 S. W. 2d 214; Schrader v. Kessler, Mo. Sup., 178 S. W. 2d 355.,

The judgment should be reversed and the cause remanded.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.