### SAUER v. WINKLER.

No. 43491.

Supreme Court of Missouri.
Division No. 1.

Jan. 11, 1954.

Theodore P. Hukriede, Washington, for appellant.

Dearing & Matthes, Will B. Dearing, Hillsboro, for respondent.

COIL, Commissioner.

Eugenia B. Sauer, plaintiff-appellant, sought to recover $15,000 damages for her husband's death caused by injuries received in a collision between his automobile and a truck operated by defendant-respondent, Robert Winkler. The accident occurred on January 22, 1951, at the intersection of U. S. Highways 66 (east-west) and 30 (which intersects from the southeast) in St. Clair, Missouri. Plaintiff has appealed from the judgment entered on defendant's verdict.

Plaintiff alleges error in the giving of defendant's instructions A and B and in the admission of evidence as to prior speed and prior manner of operation of decedent's automobile.

Plaintiff's version of the casualty was that deceased drove eastwardly on 66 across 30 and that defendant, driving west on 66, drove southwardly into deceased's automobile after it was some distance east of 30, and after deceased had swerved to his right, off the pavement and was at a virtual stop against an embankment on the south side of 66.

Defendant claimed that he drove west on 66 and attempted to turn south or southeast into 30 when his truck was struck by deceased's automobile proceeding at a high rate of speed east on 66. The questions presented make it unnecessary to detail the evidence in support of the conflicting versions.

Plaintiff submitted her case on the primary negligence charge that defendant

failed to drive as close to the right-hand side of the highway as practicable, and on the humanitarian negligence charge that defendant failed to stop, slow, or swerve. Defendant's instruction A hypothesized deceased's failure to properly control his automobile due to its excessive speed as contributory negligence, and instruction B reiterated the proposition that defendant's duty to act under the humanitarian doctrine did not arise until deceased was in a position of imminent peril.

For clarity of our subsequent holding, instructions A and B are set forth in full:

"A. The Court instructs the jury that if you find and believe from the evidence that on the 22nd day of January, 1951, Edwin T. Sauer was operating an automobile eastwardly over and along U. S. Highway 66 in Franklin County, Missouri, and if you further find that before he reached the junction of Highway 66 and Highway 30 he passed two signs located on the south side of the road, one sign notifying motorists that the area in question was a school zone and the other a cautionary sign requiring motorists to slow down, and if you further find that as the deceased, Edwin T. Sauer, was approaching said intersection and at the time he passed the cautionary signs in question he was driving at a rate of speed which was high, excessive and dangerous, taking into consideration the presence of the two cautionary signals and also the fact that he was approaching an intersection of two made and public highways, and if you further find that the speed which he was driving was such as to prevent him from properly controlling the operation and movement of his vehicle, and if you further find that he thus and thereby failed to exercise the highest degree of care, and if you further find that if he had been driving at a reasonable rate of speed he could have controlled his automobile and thus and thereby have prevented the resulting collision, then you are instructed that under the law the deceased, Edwin T. Sauer, was guilty of contributory negligence and if you believe that such contributory negligence, if any, directly contributed to bring about the collision, *then the court instructs you that the plaintiff, Eugenie B. Sauer, cannot recover under Instruction No. 1, and your verdict will be in favor of the defendant, Robert Winkler.* And in this connection you are further instructed that this is true even though you may further find and believe from the evidence that the defendant, Robert Winkler, may also have been guilty of negligence which contributed to bring about the collision. (Our italics.)

"B. The court instructs the jury that the plaintiff charges that the defendant, Robert Winkler, saw or by the exercise of the highest degree of care upon his part could have seen the automobile being operated by Edwin T. Sauer moving toward the path of defendant's truck and apparently intending to continue into the path of said truck and that the deceased was in a position of imminent peril and that the defendant thereafter in the exercise of the highest degree of care with safety to himself, could have stopped, slowed the speed of, or swerved his automobile truck aside so as to avoid the collision with the automobile being operated by Edwin T. Sauer. In connection with this charge *which is submitted to you under Instruction No. 2,* the court further instructs you that the defendant, Robert Winkler, was not required to have stopped, slowed the speed of or swerved the course of his automobile truck until he saw or by the exercise of the highest degree of care could have seen that the automobile being driven by Edwin T. Sauer intended to continue into the path of the defendant's truck and thus and thereby become in a position of imminent peril. *Therefore, you are instructed that if you find and believe from the evidence that at the time the*

*deceased, Edwin T. Sauer, became in a position of imminent peril the defendant, Robert Winkler, could not by the exercise of the highest degree of care have stopped his truck, slowed its speed or swerved the course of his truck and thereby have avoided the collision, then you are instructed that the plaintiff is not entitled to recover and your verdict will be in favor of Robert Winkler."* (Our italics.),

Plaintiff contends that instruction A directs a verdict for defendant but ignores and does not negative plaintiff's humanitarian submission; and that B directs a verdict for defendant but ignores and does not negative plaintiff's primary negligence submission.

■ Where plaintiff has submitted both primary and humanitarian negligence an instruction which directs a verdict for defendant and ignores plaintiff's right to recover under either submission is erroneous. Collins v. Beckmann, Mo.Sup., 79 S.W.2d 1052, 1055[3]; Hensley v. Dorr, Mo.Sup., 191 S.W.2d 663, 665; Phillips v. Vrooman, 361 Mo. 1098, 1105, 238 S.W.2d 355, 360[8]. And defendant's proper separate instruction on the ignored submission does not cure the error, because the instructions are thereby conflicting. Scudder v. St. Joseph Belt Ry. Co., 338 Mo. 492, 495[1], 496, 92 S.W.2d 138, 139[1], 140[3]. But where plaintiff submits both primary and humanitarian negligence, defendant may instruct on all the involved phases of both issues. Gardner v. Turk, 343 Mo. 899, 911, 123 S.W. 2d 158, 164[13, 14].

The question then is whether instructions A and B, respectively, did in fact ignore plaintiff's hypothesized recovery on her respective primary and humanitarian negligence submission.

Defendant did make some attempt to limit instruction A to plaintiff's primary negligence submission and to limit instruction B to plaintiff's humanitarian submission. A, after hypothesizing a finding of deceased's contributory negligence, closes: "then the court instructs you that

the plaintiff, Eugenie B. Sauer, cannot recover under instruction No. 1; and your verdict will be in favor of the defendant, Robert Winkler." Then follows the direction that such is the law irrespective of a finding of negligence on the part of defendant.

Now, it was correct to tell the jury that upon a finding by them that deceased was contributorily negligent, plaintiff could not recover under instruction No. 1. But it was not technically correct to follow that statement with the further direction: "and your verdict will be in favor of the defendant, Robert Winkler." This, because the jury was to return only one *verdict* as to the entire case and the fact that plaintiff could not recover under instruction 1 would not prevent plaintiff's recovery under instruction 2, and thus a finding that deceased was contributorily negligent would not alone justify a verdict for defendant. The instruction either should have eliminated the direction of a *verdict* for defendant, or should have included a qualifying phrase such as "unless you find for plaintiff under instruction 2."

However, were it not for the language of defendant's instruction B (which we presently discuss), or if instruction B had, like A's reference to instruction 1, referred in its directive part to instruction 2, we should be faced with a different question than that confronting us. In other words, under the supposed circumstance, it could be said that the jury would have understood that the meaning of each instruction was that their "verdict", in the sense of their "finding", was to be for defendant under instruction A as to instruction 1 only, and was to be for defendant under instruction B as to instruction 2 only; and that the jury would not have understood that their verdict as to the entire case was to be for the defendant on a finding of the hypothesized matters in *either* instruction 1 or 2.

The difficulty, however, is that instruction B, unlike A, does not end with language which makes clear that the directed nonrecovery by plaintiff and the directed ver-

dict for defendant are confined to the humanitarian submission contained in instruction 2. Instruction B, after setting forth the humanitarian negligence charged by plaintiff, proceeds: "In connection with this charge which is submitted to you under Instruction No. 2, the court further instructs you that the defendant, Robert Winkler, was not required to have stopped, slowed the speed of or swerved the course of his automobile truck until he saw or by the exercise of the highest degree of care could have seen that the automobile being driven by Edwin T. Sauer intended to continue into the path of the defendant's truck and thus and thereby become in a position of imminent peril. Therefore, you are instructed that if you find and believe from the evidence that at the time the deceased, Edwin T. Sauer, became in a position of imminent peril the defendant, Robert Winkler, could not by the exercise of the highest degree of care have stopped his truck, slowed its speed or swerved the course of his truck and thereby have avoided the collision, then you are instructed that the plaintiff is not entitled to recover and your verdict will be in favor of Robert Winkler."

It will be noted that the directive part of the instruction did not limit nonrecovery to "under instruction 2"; on the contrary the direction was that, if the jury found that defendant could not have avoided the collision by action after plaintiff came into and was in a position of imminent peril, then "plaintiff is not entitled to recover," followed by the further direction that "and your verdict will be in favor of Robert Winkler."

■ In determining the correctness of instructions, all of each instruction should be considered and parts should not be isolated from their context; and all the instructions should be read as parts of a single charge. Mueller v. Schien, 352 Mo. 180, 187[1], 176 S.W.2d 449, 452[2–5]. We should not be hypertechnical in requiring the use of particular words or phrases, or in requiring any particular arrangement or form of language. Rather, we should determine whether average laymen have been sufficiently apprised of the necessary facts to be found by them and of the correct legal conclusions which follow.

■ So considering instructions A and B, we are of the opinion that it was likely that average jurymen would understand that if they found that defendant could not have acted in time to have avoided a collision after deceased was in imminent peril, they were to return a verdict for defendant.

It is true that the forepart of instruction B made it clear that the instruction was directed toward and was dealing only with the humanitarian submission contained in instruction 2. But when the directive part of the instruction was reached (from and after the word "therefore"), there was no language which tended to inform and make clear to the jury that the direction was limited to nonrecovery under instruction 2. Now, we know that it is possible, and for that matter it is not unreasonable to say, that average jurors might well understand that the entire instruction, including its directive part, dealt only with the matters submitted by instruction 2, and that the jury might understand that plaintiff's recovery under instruction 1 was not barred by their "finding" against plaintiff under instruction B; and we think that such a conclusion is somewhat fortified when all of instructions 1 and 2, and all of instructions A and B, are considered together as parts of a single charge. But after careful consideration, we cannot escape the conclusion that it is more likely that the jury would not so understand, but, on the contrary, would believe that, upon finding the matters hypothesized by instruction B, they were required to return a verdict for defendant, without reference to and irrespective of their finding on the issues submitted by instructions 1 and A. For this reason, we hold instruction B prejudicially erroneous.

Plaintiff has attacked instructions A and B for other reasons unnecessary to discuss. Defendant, in drawing instructions for any

retrial, will undoubtedly do so in the light of the other claims of error made by plaintiff in her brief.

■ Plaintiff also contends that the trial court erred in admitting evidence of deceased's speed and manner of driving at times prior to, and remote from, the collision point. One of plaintiff's witnesses testified that one-half mile or less west of the collision point and shortly before the collision, deceased, traveling 70 m. p. h., passed witness' automobile. Another testified that slightly more than one-half mile west of the collision point and shortly before the collision, deceased, traveling "fast", passed witness' automobile at a place where there was a "yellow no passing line" for eastbound traffic.

The testimony as to deceased's prior passing was not admissible. It was evidence of a prior negligent act unconnected with deceased's alleged negligent speed at the collision point and it had no tendency to prove deceased's negligence in any respect pleaded or supported by the evidence. Douglas v. Twenter, Mo.Sup., 259 S.W.2d 353. We need not determine whether the admission of this testimony constituted reversible error.

Whether the testimony as to prior speed was admissible is a close question. Defendant had pleaded that deceased was contributorily negligent because of his excessive speed. A witness for plaintiff, riding in the front seat of deceased's automobile, testified that deceased's speed was 50–60 m. p. h. when the automobile reached the intersection (according to defendant, the collision occurred in the intersection). The witness who testified as to prior speed (at the closest place—not more than one-half mile—to the collision point) said that he (the witness) was driving about 40 m. p. h. when deceased passed him, and that he (the witness) arrived at the scene of the collision "very shortly after" it occurred. There was no testimony as to any further observation of deceased's automobile from a point about one-half mile away until he had reached a place 500 feet

from the intersection, where defendant saw deceased's automobile approaching the intersection at a high rate of speed. (Defendant could not estimate the speed at which deceased was traveling.) If, as in Douglas v. Twenter, supra, there was testimony from which (viewed from the standpoint most favorable to defendant) a jury could have reasonably found that deceased's 70 m. p. h. speed about one-half mile away continued until the collision was imminent, then the testimony was material. Douglas v. Twenter, supra. It is doubtful, however, that there were sufficient circumstances in evidence from which the jury could reasonably infer that deceased's prior speed continued to or close to the collision point. The view we take, however, makes it unnecessary to determine the matter because we are of the opinion that, in any event, this testimony would be better excluded at a retrial (assuming, of course, that proffered evidence as to prior speed remains substantially like that in the present record). This, for the reason that there appears to be no real purpose served by the admission of this prior speed testimony where, as in the instant case, plaintiff's own evidence established decedent's speed at 50–60 m. p. h. when his automobile entered the intersection where, according to defendant, the collision occurred. It would appear that there was no necessity or apparent desirability for this prior speed testimony and that possible prejudice which may result from it would outweigh its usefulness.

Reversed and remanded.

VAN OSDOL, C., concurs. LOZIER, C., concurs in result.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

HYDE, P. J., and HOLLINGSWORTH and DALTON, JJ., concur.

CONKLING, J., concurs in result.