**Norvel STAAT, (Plaintiff) Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, (Defendant) Appellant.**

No. 51044.

Supreme Court of Missouri, Division No. 1.

Jan. 10, 1966.

Burton M. Greenberg, St. Louis, London & Greenberg, St. Louis, of counsel, for respondent.

John D. Schneider, St. Louis, for appellant.

WELBORN, Commissioner.

This is an action for personal injuries arising out of an intersectional collision between a milk truck operated by plaintiff Norval Staat and a bus of the defendant St. Louis Public Service Company. Defendant counterclaimed for damage to its bus. The jury's verdict was for plaintiff for $35,000 and against defendant on its counterclaim. After its motion for new trial had been overruled, defendant appealed from the judgment on plaintiff's claim and its counterclaim.

The collision occurred at around 5:00 a. m., July 19, 1961, at the intersection of North Florissant and Branch Streets, public streets of the City of St. Louis. North Florissant is an asphalt paved street 36 feet wide at the Branch Street intersection. By ordinance of the City of St. Louis, North Florissant is a major street at such point, and pursuant to ordinance a stop sign had been erected on Branch at North Florissant. The ordinance required driv- ers to "stop at such 'stop' sign and yield the right-of-way to drivers and pedestrians upon such major streets" and "not [to] proceed through the intersection or into the major street until safe to do so." Although the evidence was conflicting on the question of whether or not the streets were slick from rain at the time of the collision, the jury could have found from plaintiff's evidence that, although there was some precipitation, the streets were dry.

Defendant's Walnut Park Line bus was proceeding south on North Florissant down a 5% grade toward the Branch Street intersection. Plaintiff, westbound on Branch Street, was driving a milk truck, an International, 22 feet in length.

The collision occurred when the truck had proceeded into and almost through the intersection, the front of the truck being approximately 5 feet beyond the west line of North Florissant. The bus, 8 feet in width, was operating some 3 feet from the west curb line on North Florissant. The front of the bus struck the right side of the truck and the truck overturned. We are not here concerned with the nature or extent of plaintiff's injuries.

According to plaintiff, he observed the bus "about" 700 feet away when he came to the intersection and made a complete stop at the stop sign. He looked to his left or to the south and back to the right, action which took from 3 to 5 seconds, and saw the bus again "approximately" 350 to 400 feet away, moving at about 30 miles per hour. Without looking again to either the north or south, plaintiff entered the intersection with his truck in low gear and accelerated at a gradual even rate to 15 miles per hour at which time, without any sort of warning, the bus struck his truck.

Plaintiff's witness Ellersieck, a passenger on the bus, testified that he saw the truck stopped even with the stop sign when the bus was 280 to 300 feet from the intersection and that the truck did not move from that position until the bus was from 75 to

100 feet from the point of impact. This witness estimated the speed of the bus at 25 miles per hour at that time. Another passenger testified that he did not feel the brakes being applied prior to the collision.

Defendant's witness Lay, operator of the bus, testified that he first saw plaintiff's truck when it was 90 feet east of North Florissant, traveling at 25 miles per hour. As the truck approached the intersection, plaintiff passed the stop sign without stopping and shifted gears when the bus was about 75 to 100 feet away. Plaintiff entered the intersection at 15 miles per hour, with the bus 60 to 70 feet away, traveling at 20 to 25 miles per hour. Lay applied the brakes at that time, and when the vehicles were 20 feet apart, he applied emergency pressure, causing the bus to skid 20 feet, swerve about a foot to the left and strike the truck at 5 miles per hour. The truck's speed had increased to approximately 20 miles per hour at the time of impact.

Plaintiff's expert witness testified that the bus could have been stopped on a wet asphalt surface on a 5% downgrade in 42 feet at 20 miles per hour and within 61 to 80 feet at 25 miles per hour, including reaction time. Defendant's evidence based on tests of the bus at the scene and on expert opinion was that the minimum stopping distance of the bus on dry pavement on the 5% grade was 60 feet at 20 miles per hour and 81 feet at 25 miles per hour, and that on the wet pavement, concerning which there was testimony, the minimum stopping distance at the speed at which the bus was traveling was 75 feet.

Plaintiff's petition alleged humanitarian negligence on the part of the bus driver in failing to stop or reduce speed and plaintiff's submission was on such basis. On this appeal, defendant contends that plaintiff made a submissible case on neither theory and that, therefore, its motion for a directed verdict at the close of all the evidence should have been sustained.

Although we agree with appellant that plaintiff's testimony as to distances (for example, that the bus was 350 feet away when he started from his stop at the sign) is inaccurate, nevertheless, the distances related were estimates only and do not preclude plaintiff's use of more favorable evidence not inconsistent with his basic theory. Lay v. McGrane, Mo.Sup., 331 S.W.2d 592, 596 [3–5]; McDonough v. St. Louis Public Service Company, Mo. Sup., 350 S.W.2d 739, 744 [3]; Sundermeyer v. Lentz, Mo.Sup., 386 S.W.2d 16, 20 [2–4]; Stout v. St. Louis County Transit Company, Mo.App., 285 S.W.2d 1, 4 [1, 2]. The testimony of plaintiff's witness Ellersieck and of defendant's driver was reasonably consistent insofar as speeds and distances were concerned. Their estimates accord with plaintiff's basic theory that after he had entered the intersection and after he entered a position of peril, defendant could have avoided the collision by stopping or slackening his speed. Appellant by mathematical formulae has computed that plaintiff entered a position of peril at 15.47 feet from his starting point, at which time at an attained speed of 8.42 miles per hour he could have stopped in 16.84 feet, or .69 feet short of the bus's path. Appellant then computes, based on various estimates, the position of the bus at that instant, its stopping distances at various speeds and concludes that the evidence shows conclusively that the bus driver could not have avoided the collision within the time and distance available to him. However, because of the probability of human errors in the estimates relied upon, such matters cannot ordinarily be determined with mathematical precision. In any event, we are of the opinion that there was evidence here upon which plaintiff may rely and from which the jury could have found that the driver could have, after plaintiff entered a position of peril, avoided the collision by stopping or slackening the speed of the bus. The driver himself testified that he moved his foot from the accelerator to the brake "when I saw there was real danger." He

stated that the bus was 70 feet from the point of collision when he did so. Evidence placed the speed of the bus at 20 to 25 miles per hour at that time and plaintiff's expert witness testified that at such speed and under the conditions then and there existing, the bus could have been stopped within 70 feet. The driver acknowledged that on his deposition he had stated that at 20 miles per hour he could have stopped the bus in from 40 to 50 feet. Furthermore, in view of the testimony of plaintiff's witness that he was unaware of any application of the brakes on the bus prior to the collision, the jury might also have found that the speed of the bus was not slackened from the time that the driver "saw there was real danger" and could have concluded that even a slight slackening of speed would have permitted the truck to have moved some 14 feet further to the west and the collision would have been avoided. We find that plaintiff did make a submissible case.

Appellant's further assignments of error relate to the instructions. Plaintiff's Instruction No. 7 combined a converse to defendant's sole cause instruction (No. 6) and a contributory negligence instruction on defendant's primary negligence submission of its counterclaim (No. 13). On this appeal, appellant's assignment of errors with respect to Instruction No. 7 is as follows:

"II.

"The court committed reversible error in giving instruction No. 7, which contained a misstatement of the law, was in conflict with instructions Nos. 13, 6 and 4, and altered plaintiff's theory of recovery to the end that the jury could only have been confused and misled thereby.

"A. Instruction No. 7 is a misstatement of the law in that it charges the defendant with a higher duty than the law requires.

"B. Instruction No. 7 is in conflict with instruction No. 13 in that it takes away the right-of-way given the defendant by the law and by instruction No. 13.

"C. Instruction No. 7 is in conflict with instruction No. 6 in that it permits the jury to find that the defendant failed to exercise a duty that was not imposed on defendant by law and prevents the jury from considering plaintiff's conduct as the sole cause of the collision.

"D. Instruction No. 7 is in conflict with instruction No. 4, and alters plaintiff's theory of recovery in that it allows the jury to find that plaintiff was in imminent peril at a time when plaintiff was not in immediate and certain danger."

In its motion for new trial (which contains the specific grounds of error urged against the instruction in the trial court, Civil Rule 70.02, V.A.M.R.), the following errors were assigned:

"28. That the Court erred in giving plaintiff's Instruction No. 7 to the jury for the following reasons, among others:

"a) That it is in conflict with Instruction No. 6;

"b) Under Instruction No. 7 the jury is permitted to find that the operator was negligent under other instructions and bars the sole cause defense, when, in fact, the jury could not find the operator negligent under other instructions if they found the facts hypothesized in Instruction No. 6.

"c) Instruction No. 4 submits humanitarian failure to stop or slacken based on plaintiff's story (by which he is bound). Instruction No. 6 submits sole negligence of plaintiff on operator's story or on evidence of independent witnesses that plaintiff entered the intersection when the bus was so close as to be immediate hazard. The two theories are at war with each other, and Instruction No. 7 is confusing and places the two theories in conflict by advising the jury that plaintiff can recover regardless of which story the jury believes.

"d) Instruction No. 7 erroneously submits general negligence to the jury and does not confine the jury's consideration to the

issues submitted under the instructions and allows the jury a roving commission."

■ Comparison of the assignments of error here with those specified in the motion for new trial shows that appellant has attempted to raise here objections to the instruction which were not presented in the trial court. The motion for new trial does not charge, as do the specifications here, particularly II–A and II–C, that the instruction imposed upon defendant a greater duty than the law requires. No mention whatsoever is made in the motion for new trial of conflict between Instructions Nos. 7 and 13, specified here in II–B. The motion for new trial does refer to conflict between Instructions Nos. 7 and 4, but the conflict so specified in no manner relates to the error now based under II–D upon such claimed conflict. We find none of the specifications here asserted to have been raised by the motion for new trial and therefore the objections to Instruction No. 7 are not before us for review. Dial v. Seven-Up Bottling Company, Mo.Sup., 373 S.W.2d 53, 58 [10–12]; Wren v. St. Louis Public Service Company, Mo.App., 355 S.W.2d 365, 372 [12].

Appellant next attacks Instruction No. 15, given at the request of plaintiff. This instruction was a converse to defendant's Instruction No. 13, submitting its counterclaim based upon primary negligence in plaintiff's failing to yield the right of way. The first sentence of Instruction No. 13 read as follows:

"The Court instructs the jury that in regard to defendant's counter claim an ordinance of the City of St. Louis provides that every driver approaching a major street where a stop sign is erected shall yield the right-of-way to drivers upon such major streets and shall not proceed through said intersection or into the major street until safe to do so."

After hypothesizing factual matters, the instruction told the jury that "if you find that in the exercise of the highest degree of care plaintiff should have yielded the right of way through said intersection to the bus but that he failed to do so and was thereby negligent," etc., the verdict on defendant's counterclaim should be for defendant.

Instruction No. 15, here under attack, read as follows:

"The Court instructs the jury that if you find and believe that plaintiff did not violate the major stop sign as submitted in instruction No. 13, then your verdict must be for the plaintiff on defendant's counterclaim, as submitted to you in instruction No. 13."

■ Appellant here contends that Instruction No. 15 directs a verdict for plaintiff if he "did not violate the major stop sign," but that defendant's Instruction No. 13, which it purported to converse, did not submit violation of the stop sign as negligence but submitted failure to yield the right of way. Although there is no doubt that the language of Instruction No. 15 is not precisely accurate, in our opinion the language employed was not such that jurors of ordinary intelligence would have been misled and confused by it. Instruction No. 13 correctly told the jury that one of the duties of a driver who approaches a major street at which a stop sign is erected is to yield the right of way to vehicles upon the major street. The other duty, not referred to in Instruction No. 13, is to stop. Failure in either respect constitutes a violation of the ordinance imposing the duty, not of the stop sign. When Instruction No. 15 spoke of violation of "the major stop sign as submitted in Instruction No. 13," reference to that instruction clearly revealed that the violation there referred to was failure to yield the right of way. Since the instructions must be read as a whole, we believe that the jury would reasonably have understood that the violation referred to in Instruction No. 15 was violation of the duty referred to in Instruction No. 13. We do not believe that jurors, viewing the matter in the light of the entire submission and in the light of the argu-

ments to the jury, in which the emphasis was upon the negligence in failing to yield the right of way, would have, as appellant contends, taken Instruction No. 15 to authorize a verdict for plaintiff on the counterclaim if the jury found merely that plaintiff stopped at the stop sign. Had Instruction No. 15 authorized a verdict for plaintiff if the jury found merely that plaintiff did stop at the stop sign, the instruction would have been erroneous for failure to converse the act of negligence submitted in defendant's instruction. Such was the situation in Wiseman v. Jackson, Mo.App., 309 S.W.2d 356, Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355, and Willard v. Bethurem, Mo.App., 234 S.W.2d 18. In our opinion, the jury would have understood that Instruction No. 15 authorized a verdict for plaintiff only on the finding of no violation of the duty submitted under Instruction No. 13 and not on the absence of violation of some other and different duty.

Appellant's final attack on Instruction No. 15 is that, by its concluding phrase, "then your verdict must be for the plaintiff on defendant's counterclaim, as submitted to you in Instruction No. 13," a verdict was directed, on the basis of Instruction No. 15, in favor of plaintiff on defendant's counterclaim, without reference to defendant's right of recovery under its humanitarian submission. (A similar attack is also directed at Instruction No. 7, but appellant acknowledges that its motion for new trial made no such specification as to Instruction No. 7. Therefore, that matter is not before us for review.) As the cases relied upon by appellant hold (Wilson v. Tonsing, Mo.Sup., 375 S.W.2d 140, Wabash R. Co. v. Dannen Mills, Inc., Mo.App., 279 S.W.2d 50), an instruction by defendant on its counterclaim charging primary negligence against plaintiff is erroneous if it ignores the plaintiff's verdict-directing humanitarian submission. However, that is not precisely the question here presented. The situation here is more nearly comparable with that presented in

Sauer v. Winkler, Mo., 263 S.W.2d 370, likewise relied upon by appellant. In Sauer, plaintiff submitted her claim on both primary and humanitarian negligence. Defendant submitted a contributory negligence instruction and an instruction that defendant's duty to act under the humanitarian doctrine did not arise until the deceased was in a position of imminent peril. Defendant's contributory negligence instruction, after hypothesizing the matters relied upon, stated: "(T)he court instructs you that plaintiff * * * cannot recover under Instruction No. 1, and your verdict will be in favor of the defendant, * * *." In discussing the attack on the instruction, the court stated (263 S.W.2d 1. c. 373):

"The question then is whether instructions A and B, respectively, did in fact ignore plaintiff's hypothesized recovery on her respective primary and humanitarian negligence submission.

"Defendant did make some attempt to limit instruction A to plaintiff's primary negligence submission and to limit instruction B to plaintiff's humanitarian submission. A, after hypothesizing a finding of deceased's contributory negligence, closes: 'then the court instructs you that the plaintiff, Eugenie B. Sauer, cannot recover under instruction No. 1, and your verdict will be in favor of the defendant, Robert Winkler.' Then follows the direction that such is the law irrespective of a finding of negligence on the part of defendant.

"Now, it was correct to tell the jury that upon a finding by them that deceased was contributorily negligent, plaintiff could not recover under instruction No. 1. But it was not technically correct to follow that statement with the further direction: 'and your verdict will be in favor of the defendant, Robert Winkler.' This, because the jury was to return only one verdict as to the entire case and the fact that plaintiff could not recover under instruction 1 would not prevent plaintiff's recovery under instruction 2, and thus a finding that deceased was contributorily negligent

would not alone justify a verdict for defendant. The instruction either should have eliminated the direction of a verdict for defendant, or should have included a qualifying phrase such as 'unless you find for plaintiff under instruction 2.'

"However, were it not for the language of defendant's instruction B (which we presently discuss), or if instruction B had like A's reference to instruction 1, referred in its directive part to instruction 2, we should be faced with a different question than that confronting us. In other words, under the supposed circumstance, it could be said that the jury would have understood that the meaning of each instruction was that their 'verdict', in the sense of their 'finding', was to be for defendant under instruction A as to instruction 1 only, and was to be for defendant under instruction B as to instruction 2 only; and that the jury would not have understood that their verdict as to the entire case was to be for the defendant on a finding of the hypothesized matters in either instruction 1 or 2."

In this case, we do not have an instruction comparable to Instruction B, the source of error in Sauer. Here plaintiff's Instruction No. 15 is more nearly comparable to defendant's Instruction A in Sauer. In fact, Instruction No. 15 is even more specifically limited to defendant's primary negligence submission alone than was Instruction A in Sauer. Here the language employed was that the verdict should be for plaintiff on defendant's counterclaim as submitted in Instruction No. 13. In Sauer, the concluding language of Instruction A was: "[Y]our verdict will be in favor of the defendant." Only by reference to the preceding language could this have been found to have been limited to the finding on the primary negligence submission alone, and not on the case as a whole. Here, the language objected to specifically

refers to the counterclaim submitted in Instruction No. 13. As pointed out in Sauer, the language preferably should have referred to a "finding" on the Instruction No. 13 submission. Again, however, we think that it reasonably can be said "that the jury would have understood that * * * their 'verdict', in the sense of their 'finding', was to be for defendant" under Instruction No. 15 as to Instruction No. 13 only. The fact that the so-called "tail" of plaintiff's Instruction No. 16 refers to the jury's "finding" on the Instruction No. 13 counterclaim submission does not, as appellant argues, preclude the conclusion that the jury would have accorded a similar meaning to the term "verdict" as used in Instruction No. 15.

Nor do we agree with appellant that the effect of plaintiff's Instruction No. 15 was to limit the jury's consideration of defendant's counterclaim to its primary negligence submission, to the exclusion of its humanitarian submission under its Instruction No. 9. Appellant calls our attention to the fact that "there was no parallel converse to Instruction No. 9 to suggest that the instructions were limited in their effect to only their primary submission." Plaintiff was not required to submit a parallel converse to Instruction No. 9. The language of Instruction No. 15 was sufficient to show that it was limited only to the primary submission under Instruction No. 13.

Finding no error, the judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.